### C. E. McFarland v. M. F. Hammond et al.

No. 2653.  Decided February 10, 1915.

**Jurisdiction of Supreme Court—Appeal—Injunction—Interlocutory Judgment—Writ of Error.**

The Supreme Court has no jurisdiction to grant a writ of error to revise the rulings of the Court of Civil Appeals in an appeal from an interlocutory judgment of the County Court granting a temporary injunction against the seizure and sale of personal property claimed to be exempt, that being a case in which, by article 1591, Rev. Stats., 1911, the ruling of the Court of Civil Appeals is made conclusive. Cole v. State ex rel, Cobolini, 106 Texas, 472, followed. (Mr. Justice Hawkins dissenting.)  (P. 580.)

Error to the Court of Civil Appeals, First District, in an appeal from the County Court of Harris County.

Hammond and another appealed from a judgment granting a temporary injunction in favor of McFarland. The injunction was dissolved by the appellate court and appellee obtained writ of error. Defendants in error filed answer to the application and motion to dismiss the writ for want of jurisdiction.

*Gibson & Wander,* for plaintiff in error.

*Stanley A. Beard* and *Hutcheson & Hutcheson,* for defendants in error.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

The appeal prosecuted in this case to the Honorable Court of Civil Appeals was from an interlocutory decree of the County Court at Law of Harris County. granting a temporary injunction restraining the seizure and sale under execution of certain personal property claimed to be exempt. It is a case in which the judgment of the Court of Civil Appeals is made conclusive by article 1591, and to which, by the terms of that article, this court is prohibited from allowing a writ of error. Cole v. State, ante, p. 472, 170 S. W., 1039.

Under the Act of 1907 (General Laws of 1907, page 206), providing for appeals from interlocutory orders granting, refusing or dissolving temporary injunctions, amended by the Act of 1909 (General Laws of 1909, page 354), we have assumed jurisdiction to grant a writ of error in such appeals, where the case was not of the character in which the judgment of the Court of Civil Appeals is made final by article 1591. It is obvious, however, that that Act has not the effect of enlarging the jurisdiction of this court, save as to the power to review such interlocutory orders, which theretofore was denied it; and does not authorize the granting of a writ of error on appeals from such orders in cases of which, by article 1591, the Court of Civil Appeals has final jurisdiction.

The motion to dismiss the application for writ of error for want of jurisdiction is, therefore, granted.

MR. JUSTICE HAWKINS, dissenting.

In 'my opinion this court has jurisdiction over this cause. At an early date I will file a full statement of my views herein.

At a later day Mr. Justice Hawkins filed the following dissenting opinion:

The Court of Civil Appeals for the First Supreme Judicial District, through Chief Justice Pleasants, made the following statement and findings of fact:

"This appeal is from a decree of the County Court at Law of Harris County granting a temporary injunction restraining the defendants from seizing and selling under execution a cash register machine and refrigerator or ice box owned and used by the appellee in carrying on his trade of butcher. The appellant M. F. Hammond is the sheriff of Harris County. The other appellant, the Houston Packing Company, a corporation organized under the laws of this State, having recovered a judgment in the County Court of Harris County against the appellee for the sum of $215 and costs of suit, procured the issuance of an execution on said judgment and placed same in the hands of appellant Hammond, who proceeded to levy upon the articles above named, and advertise same for sale. This suit was brought to restrain

appellants from taking the possession of the property from appellee and selling it under the execution before mentioned.

"The contention of appellee is that the property is exempt from forced sale under subdivision 5 of article 2395, Sayles' Civil Statutes, which reserves to every family exempt from attachment or execution and every other species of forced sale for the payment of debts, unless the debt is secured by lien on the property, 'all tools, apparatus and books belonging to any trade or profession.'

"The evidence shows that appellee is a married man and head of a family. He conducts a butcher shop in the City of Houston and has been engaged in that trade or business for two years or more. He testified: 'I have no other trade or occupation and no other income. I am dependent for support of myself and family entirely upon my trade in keeping and carrying on said butcher shop. The trade of a butcher is like that of a skilled mechanic, it requires training and practice to be a butcher so as to develop necessary skill in cutting the meat. The common meaning of a butcher as understood here in this part of Texas is one that is skilled in cutting up meat for retail and who keeps a butcher shop or meat market. The common, usual and necessary tools and apparatus used in such, are knives of different kinds for cutting meat, cleavers, saws (meat saws), meat blocks on which meat is cut, scales for weighing, electric fans to keep butcher and helpers cool while at work, and the meat also, and to keep off flies, a cash register, counters, an ice box or meat box in which meat is kept refrigerated, a fish box and some other implements. That the ice box or meat box levied on by the sheriff under the execution in this case is one of the most serviceable and necessary apparatus for the trade. That in this warm and humid climate it would be impossible to run the butcher's trade or keep butcher shop without an ice box where the meat could be kept cool, meat would spoil and rot in a few minutes without same. That the sanitary officer would not permit a butcher shop conducted without such apparatus. That plaintiff kept all of these mentioned articles in his shop. That the cash register was also necessary and serviceable in being a place to make quick change of money; that it also kept a register of all sales and did away with necessity of a bookkeeper.'

"The evidence further shows that appellee had slaughtered very few animals, most of the meat sold in his shop being obtained from the packing houses; and this is true of the butcher trade generally in cities. A cash register is commonly used in butcher shops and is necessary for making quick change and keeping account of sales." (Hammond v. McFarland, 161 S. W., 47.)

That appellate court held that the question of law involved had been settled in Simmang v. Insurance Company, 102 Texas, 39, 132 Am. St., 846, 112 S. W., 1044; Davis v. Terrell, 100 Texas, 291, 99 S. W., 404, and accordingly vacated the order granting the injunction.

Application for a writ of error herein was filed in the Court of Civil Appeals after the Act of 1913, page 107, relating to the jurisdiction of the Supreme Court had become effective on July 1, 1913.

Because of the nature of the case, it being one in which a temporary injunction had been granted by the trial court, a motion to advance was granted by this court, under the Act of 1909, page 354. (Rev. Stats., arts. 4644-4645-4646.) Because it was considered that the Court of Civil Appeals had probably erred in its judgment dissolving said temporary injunction, this court granted said application, and· an order to that effect was entered, and, defendants in error having filed, under our rule 5, an answer to said application, without reserving therein the right to be heard in open court, this cause was noted for final decision, upon its merits, as well as upon a motion to dismiss for want of jurisdiction which had been filed here by defendants in error, and upon the cross assignment questioning jurisdiction set out in plaintiff in error's reply to said motion. Meanwhile, upon renewed consideration of the subject, my honored associates concluded that this court has no jurisdiction in this cause; whereupon it was dismissed for want of jurisdiction.

However, as I dissented from that order, and as several questions which are involved in this case are of prime importance, I will express my individual views thereon, suggesting the disposition thereof which I think should be made.

### ON MOTION TO DISMISS.

Said motion raises various interesting questions under said Act of 1913 (Vernon's Sayles' Statutes, 1914, articles 1521, 1522, 1526, 1543 and 1544) denying the jurisdiction of the Supreme Court under that statute. But no one of those questions is material to the issue as to the jurisdiction of the Supreme Court in the case at bar, because the operation and effect of article 1521, relating to the appellate jurisdiction of the Supreme Court, as amended by that Act, is therein expressly restricted to certain therein enumerated classes of cases "when brought to the Courts of Civil Appeals by writ of error or appeal from *final* judgments of the trial courts," whereas, the judgment of the trial court herein was not a final judgment. Ft. Worth Imp. Dist. v. City of Ft. Worth, 106 Texas, 148, 158 S. W., 164, 48 L. R. A. (N. S.), 994.

Said motion was based upon several other grounds, as hereinafter shown, but the only ground of said motion to which the opinion of the majority herein is responsive is as follows: "This case is an interlocutory appeal, and according to subdivision 6 of article 1591, Revised Statutes, 1911, the Court of Civil Appeals has final jurisdiction over interlocutory appeals."

In dismissing this cause the majority·opinion, by Mr. Justice Phillips, says: "It is a case in which the judgment of the Court of Civil Appeals is made conclusive by article 1591, and to which, by the terms of that article, this court is prohibited from allowing a writ of error. Cole v. State, 106 Texas, 472, 170 S. W., 1036."

As no particular subdivision of article 1591 is designated in said opinion its sweep is broad enough to include subdivision 1, which relates

to County Court cases, and also subdivision 6, which includes all appeals from interlocutory orders; but my understanding is that it was meant to emphasize subdivision 1. Therefore, both of those subdivisions of article 1591 being involved in this jurisdictional issue, I will discuss both in connection with the provisions of said articles 4644-4645-4646, which, in my opinion, confer upon this court appellate jurisdiction in this cause.

The pertinent provisions of the Act of 1892, 1 S. S., p. 26, as now substantially re-enacted in Revised Statutes, 1911, are as follows:

"Art. 1591 (996). Same subject.—The judgments of the Courts of Civil Appeals shall be conclusive on the law and fact, nor shall a writ of error be allowed thereto from the Supreme Court in the following cases, towit:

"1. Any civil case appealed from a County Court or from a District Court, when, under the Constitution, a County Court would have had original or appellate jurisdiction to try it, except in probate matters and in cases involving the revenue laws of the State or the validity of a statute.

"    .   .   .

"5. All cases of contested elections of every character, other than for State officers, except where the validity of the statute is attacked by the decision.

"6. The judgments of said Courts of Civil Appeals shall be final in all appeals from interlocutory orders appointing receivers or trustees or such other interlocutory appeals as may be allowed by law."

This appeal is based upon the provisions of the Act of 1907, page 206, as amended by Act of 1909, page 354, as carried into Revised Statutes, 1911, title 69, relating to "Injunctions," as follows:

"Art. 4644. Any party or parties to any civil suit wherein a temporary injunction may be granted, refused or dissolved, under any of the provisions of this title, in term time or in vacation, may appeal from the order or judgment granting, refusing or dissolving such injunction, to the Court of Civil Appeals having jurisdiction of the case; but such appeal shall not have the effect to suspend the enforcement of the order appealed from, unless it shall be so ordered by the court or judge who enters the order; provided, the transcript in such case shall be filed with the clerk of the Court of Civil Appeals not later than fifteen days after the entry of record of such order or judgment granting, refusing or dissolving such injunction." Acts 1909, p. 354, sec. 2.

"Art. 4645. It shall not be necessary to brief such case in the Court of Civil Appeals or Supreme Court, and the case may be heard in the said courts on the bill and answer, and such affidavits and evidence as may have been submitted by the judge granting, refusing or dissolving such injunction; provided, the appellant may file a brief in the Court of Civil Appeals or Supreme Court upon the furnishing the appellee with a copy thereof not later than two days before the case is called for submission in such court, and the appellee shall have until the day the case is called for submission to answer such brief." Id., sec. 3.

"Art. 4646. Such case shall be advanced in the Court of Civil Appeals or Supreme Court on motion of either party, and shall have priority over other cases pending in such courts." Id., sec. 4.

Now, the decree of the trial court from which this appeal was taken was, indeed, an order or judgment made by a "County Court" within the terms of article 1591, subdivision 1, and, at the same time, was, indeed, an "interlocutory order," within the terms of subdivision 6 of that article; consequently, if article 1591 is to control articles 4644-4645-4646 and restrict the scope of appeals authorized by the latter articles, the judgment of the Court of Civil Appeals herein was final; otherwise, this court has jurisdiction over this interlocutory appeal perforce articles 4644-4645-4646. But does article 1591 control the issue as to the jurisdiction of the Supreme Court herein? I think not.

As to the effect of the obvious conflict between articles 4644-4645-4646 and subdivisions 1 and 6 of article 1591, it would seem that one need only call attention to their respective dates, as above indicated, and quote from Revised Statutes, 1911, final title, as follows:

"Sec. 16. That the provisions of the Revised Statutes, so far as they are substantially the same as the statutes of this State in force at the time when the Revised Statutes shall go into effect, or of the common law in force in this State at said time, shall be construed as continuations thereof, and not as new enactments of the same."

As an unavoidable result of said conflict, which is demonstrably irreconcilable, and because said portions of title 69 deal specifically with appeals in injunction cases, whereas article 1591, in subdivisions 1 and 6 employ only general terms, and, more especially, because said portions of title 69 are later expressions of the legislative will upon the subject, they are in my opinion, of controlling force in the case at bar, and neither subdivision 1 nor subdivision 6, nor any other portion of article 1591 has, now, any proper application whatever to this case; and that is true although it must be conceded that, prior to the taking effect of said Act of 1907, page 206 (articles 4644-4645-4646), the judgment of the Court of Civil Appeals herein would have been final under two subdivisions of article 1591: under subdivision 1 thereof because it is a "County Court" case, and under subdivision 6 thereof because the order of the trial court appealed from was "interlocutory." It will be observed that in this case my associates have given the more general as well as earlier statute upon the same subject controlling effect.

Before undertaking a more detailed analysis of said conflicting statutes, let us see, briefly, what is the status and effect of several orders and decisions of this court which bear, with more or less force, upon this jurisdictional issue.

In line, and in perfect harmony, except in one particular, with the foregoing extract from said majority opinion herein, by Mr. Justice Phillips, is his opinion in Cole v. State, supra, in which I did not participate, being then temporarily absent.

In the Cole case, speaking for the majority, he announced what I regard as a novel and highly technical theory of construction, leading

to startling results in our jurisprudence, whereunder they reached the conclusion, in effect, that the "substantive error clause," subdivision 6 of article 1521 as amended by the Act of 1913, page 107, defining the jurisdiction of the Supreme Court, about which our State Bar Association, the legal profession, and several Legislatures of this State have heard so much in recent years, does not confer upon the Supreme Court jurisdiction in any case in which the judgment of the Court of Civil Appeals is, by article 1591, declared to be final.

Declaredly, that same theory of construction is made the basis of their decision herein dismissing this cause for want of jurisdiction.

True, the Cole case was one involving a "contested election," and the apparent conflict there was between said "substantive error clause" as set out in said amended article 1521, subdivision 6, and subdivision 5 of article 1591, while this appeal, as we have seen, is in a "County Court" case and is also an "interlocutory appeal," and the apparent conflict here is, therefore, between articles 4644-4645-4646 and subdivisions 1 and 6 of article 1591; but it is under the same theory of statutory construction that, in both this case and the Cole case, supra, article 1591 has been so held, by my associates, to be of paramount importance and controlling effect; in this case as controlling articles 4644-4645-4646, and in the Cole case as controlling subdivision 6, article 1521, as so amended.

Now, even if it be conceded, for the sake of argument, that said theory of construction, under which this case and the Cole case, supra, as well as quite a number of cases in which this court had already assumed jurisdiction and granted writs of error, have been dismissed for want of jurisdiction in this court, is sound, it follows, inexorably, I think, that this court is utterly destitute of jurisdiction over any interlocutory appeal whatever in any case originating in any trial court, whether it be in a County Court case or in a District Court case; because subdivision 6, article 1591, makes no such distinction, but does make the judgments of Courts of Civil Appeals therein final in them all, alike.

Nevertheless, upon the idea that articles 4644-4645-4646 do confer upon this court appellate jurisdiction over such interlocutory appeals in *District Court* cases, there is pending upon our cause docket a cause entitled Spence et al. v. Fenchler et al., which is an appeal from an order of a District Court denying a temporary injunction (151 S. W., 1094), over which this court has assumed and retains jurisdiction, although the able brief of eminent counsel for defendant in error therein strongly urged upon this court that, because of that very subdivision 6, article 1591, this court is without jurisdiction therein.

But it seems not to have been suggested by any brief, in that case or this, that the appellate jurisdiction of the Supreme Court in cases of that and this character depends upon whether such interlocutory appeal is in a District Court case or in a County Court case. Yet, in actual practice, thus far at least, in that case and in this, our jurisdiction over

such interlocutory appeals has thus been made to turn upon that precise decisive point. ·

Still seeking light upon this jurisdictional question as reflected by decisions of this court, I recall the fact that in Fort Worth Imp. Dist. v. City of Fort Worth, supra, the very provisions of articles 4644-4645 which are here under review were construed, although, directly, only as related to practice in the Court of Civil Appeals, yet, by necessary implication and effect, indirectly, as related to practice in this court; the practice in the Court of Civil Appeals and in the Supreme Court, in that character of cases, being made precisely the same, as we shall see, by said articles 4645-4646. That, too, was a District Court case in which a temporary injunction had been granted; so it was an "interlocutory appeal" under articles 4644-4645-4646.

The jurisdictional effect of said statutes was not discussed, and, indeed, was not necessarily involved in that case because this court acquired jurisdiction therein upon "certified questions," whether it might have had jurisdiction over that appeal under articles 4644-4645-4646 or not. That decision was rendered before said Act of 1913, page 107, became effective, so it had nothing to. do with said case.

But the opinion therein, by Mr. Justice Phillips, is by no means inconsistent with my conclusion that this court has jurisdiction in the case at bar, and, as far as it goes, is in harmony with my conclusions, as stated herein, relative to the cardinal purposes of articles 4644-4645-4646; and I think it strongly tends to support all those views and conclusions.

In reply to the first question there certified, this court held that the appeal was interlocutory, under articles 4644-4645-4646.

The second question there certified from the Court of Civil Appeals refers, in express terms, to articles 4644-4645, and is as follows: "If the appeal is authorized under the articles of the statute last above referred to, then may the same be heard in this court in the absence of a motion for new trial (under rule 71a for the guidance of District and County Courts), and in the absence of assignments of error?"

Said opinion, in answering that question, said: "In reply to the second question, we answer that in a proceeding of this character the filing of a motion for a new trial was unnecessary, and the appeal was entitled to be heard without the presentation of formal assignments of error. The statute imposes no such requirement in terms, and it is excluded, we think, by necessary implication. The provision in article 4645 that 'the case may be heard in the said courts on the bill and answer, and such affidavits and evidence as may have been admitted by the judge granting, refusing or dissolving such injunction,' very plainly implies that the filing and determination of a motion for a new trial was not a necessary prerequisite to the appeal. It contemplates that the same issues shall be presented to the appellate court as to the trial judge, and in the same way, as is evident from this provision. A motion for a new trial could perform no useful office in such a proceeding. If it had been contemplated, the statute would not have required, as it

·does, that the time for the filing of the transcript be computed from the date of the entry of record of the order or judgment granting, refusing or dissolving the injunction, which clearly has reference to the original order or judgment of the judge in the matter.

"A further provision in article 4645 is that the appellant 'may file a brief in the Court of Civil Appeals or Supreme Court,' plainly showing that the filing of briefs is not positively required. Since briefs are not required, the provision that the case may be heard in the appellate courts upon the 'bill and answer,' etc., clearly has the force of dispensing with the filing of assignments of error. The purpose of the statute ·was to facilitate the prompt hearing of such appeals, and it is manifest from its provisions that it was the intention of the Legislature to relieve the proceeding from these formalities."

What were the purposes and what the fair and reasonable meaning of articles 4644-4645-4646, according to the ordinary signification of their terms? That these questions may be answered intelligently they should be considered in the light of statutes, if any, bearing upon the subject in force when said articles were enacted. Thus, only, may we hope to get the true legislative viewpoint.

Revised Statutes, 1895, provided: "Article 1383 (1380). An appeal or writ of error may be taken to the Courts of Civil Appeals from every *final judgment* of the District Court in civil cases, and from every *final judgment* in the County Court in civil cases of which the County Court has original jurisdiction, and from every *final judgment* of the County Court in civil cases of which the court has appellate jurisdiction, where the judgment or amount in controversy exceeds one hundred dollars, exclusive of interest and costs, and an appeal shall lie from an interlocutory order of the District Court appointing a receiver or trustee in any cause, etc." Acts 1892, p. 43.

Those provisions were carried forward into Revised Statutes, 1911, as articles 2078-2079. That revision added article 2080, as follows: "Appeals shall also lie from the District and County Courts to Courts of Civil Appeals, from orders granting or dissolving temporary injunctions, in cases and in the manner provided for in articles 4644 and 4645 of the Revised Civil Statutes." (Acts 1909, p. 354, secs. 2 and 3.)

It thus appears that in so inserting said article 2080 several of the provisions of said Act of 1909 (Rev. Stats., 1911, arts, 4644-4645-4646), were overlooked, but that fact does not affect the integrity or force of said articles 4644-4645-4646, as they stand, in proper place, in that revision.

The Twelfth Legislature did enact a statute which contained the following provisions: "Section 1. Be it enacted by the Legislature of the State of Texas: That any party to any·civil suit that may now be pending, or may hereafter be instituted in any of the District Courts of this State, shall have the right of appeal to the Supreme Court of the State from any interlocutory judgment, order or decree that may hereafter be rendered by such District Court in such suit.

"Sec. 2. That all appeals authorized by the first section of this Act

shall be regulated by the law regulating appeals from final judgment in the District Court, so far as the same may be applicable thereto."

But, as stated by Speer, J., in Merrill v. Savage, 49 Texas Civ. App., 292, 109 S. W., 408, this court held that Act "nugatory and void for want of adequate provision in the law to carry out its execution, upon the reasoning that the law regulating appeals from final judgments in the District Court was wholly inapplicable to appeals from interlocutory orders," citing Ward v. Ward, 37 Texas, 390; Dial v. Collins, 40 Texas, 370. That error was avoided in adopting articles 4644-4645-4646, which seem to have been drafted to cover the whole subject of appeal from such interlocutory orders in injunction cases.

It seems that prior to the adoption of the Act of 1907, page 206, there was in force no statute of this State which authorized any appeal whatever from any order of a District Court or of a County Court, or of any judge of either such court, granting, refusing or dissolving a temporary injunction.

The title of that Act was as follows: "An Act to amend article 2989, title 56, of the Revised Civil Statutes, with respect to the granting of injunctions, and providing for appeals from judgments or orders of trial courts in such cases, and declaring an emergency."

It will be noticed that, aside from amendments of the provisions of Revised Statutes, 1895, relating to the "granting" of injunctions, with which we are not now immediately concerned, the legislative purpose disclosed by said caption was to provide "for appeals from judgments or orders of trial courts in such cases," and to declare "an emergency."

Then, as now, District Courts and County Courts were the only trial courts clothed with authority to grant or issue injunctions, so they were the only "trial courts" to which said caption or the body of said Act of 1907, or said Act of 1909 referred, or to which articles 4644-4645-4646 now refer. The provisions of said Act of 1907 did not extend to orders or judgments "refusing" injunctions, and did not declare "but such appeal shall not have the effect to suspend the enforcement of the order appealed from, unless it shall be so ordered by the court or judge who enters the order"; but with those two exceptions sections 2, 3, and 4 of that Act were practically identical with the corresponding portions of the amendatory Act of 1909, page 354, and of said articles 4644-4645-4646, in which said excepted provisions were inserted. In other words, the same *right of appeal,* given originally by said Act of 1907 has been extended, since, to embrace orders and judgments "refusing" temporary injunctions; but the *practice* and the *jurisdiction* relating to all interlocutory appeals in all such cases remain identical with that originally provided by said Act of 1907, and, since the taking effect of said Act of 1907, page 206, there has been no change whatever in those statutes so far as they relate to appeals from orders or judgments "granting" temporary injunctions.

Through the captions and bodies of each of said Acts, and through articles 4644-4645-4646, which are practically identical with the corresponding sections of said Act of 1909, I have searched in vain for

any direct or indirect reference to said article 1591 or any subdivision or provision thereof, or to any other statute which either of the three Legislatures, in enacting said Act of 1907, or said Act of 1909, or said articles 4644-4645-4646, respectively, might reasonably have intended or desired, or expected, to at all modify or restrict the plain and ordinary meaning of the language in which said provisions relating to interlocutory appeals in such cases was written, or to restrict to trial courts and Courts of Civil Appeals the effect of the provisions of articles 4644-4645-4646, conferring *jurisdiction,* or to restrict the operation and effect of the provisions of said articles regulating *practice* in the Supreme Court in such cases, to only District Court cases, thereby excluding County Court cases.

Logically, therefore, there is, I think, no reasonable basis for the assumption that any such restriction or limitation upon that language was intended or contemplated by any one of those three Legislatures.

On the contrary, both the broad remedial purposes which they evidently had in view in enacting said Acts of 1907 and 1909 and articles 4644-4645-4646, authorizing appeals from such orders or judgments, and the phraseology of said captions and statutes, clearly indicate to my mind that the Legislature thereby intended:

(1)  To authorize appeals from *all such orders and judgments,* whether made by a District Court or by a County Court. That necessarily follows from the use of the words "any civil suit wherein a temporary injunction may be granted, refused or dissolved under any of the provisions of this title," in the context. ·

(2)  To confer upon Courts of Civil Appeals, and upon the Supreme Court, in turn, appellate jurisdiction therein.

(3)  To regulate practice in all such appeals therein, in the Court of Civil Appeals and in the Supreme Court, making it uniform in both courts. The ultimate purpose was to secure finally correct and early decisions in all such interlocutory appeals in injunction cases, without regard to their origin.

All of the prescribed regulations concerning *practice* in the Court of Civil Appeals and in the Supreme Court certainly seem appropriate to all such appeals, without regard to whether the case is a District Court case or a County Court case. By "District Court case" I mean one of which the District Court alone has original jurisdiction, and by "County Court case" I mean one of which the County Court has original jurisdiction even though the District Court may have concurrent original jurisdiction therein. In setting forth rules of practice in said appellate courts there is neither made nor suggested any distinction whatever based on an inquiry as to whether such case is a District Court case or a County Court case. All those provisions concerning practice utterly ignore that distinction. The inevitable inference is that the Legislature contemplated no such distinction.

Extending the inquiry covering the point of "practice" and including in that inquiry the point of *jurisdiction,* also, it must be noted that article 4645 expressly and plainly declares: "It shall not be necessary

to brief such case in the Court of Civil Appeals or Supreme Court, and *the case may be heard in said courts* on the bill and answer, and such affidavits and evidence as may have been admitted," etc., and article 4646 expressly provides that such case "shall be advanced in the Court of Civil Appeals or Supreme Court on motion of either party, and shall have priority over other cases pending in such courts."

It has been suggested that said statutory provisions relating to such hearings in the Supreme Court are jurisdictional to the extent of conferring upon that court *jurisdiction* in all such District Court cases, and not merely regulatory of practice in the Supreme Court, but that, as to just such County Court cases, said provisions concerning such hearing and priority in the Supreme Court are neither jurisdictional nor regulatory, and, in fact, have no application whatever. The inevitable practical effect of dismissing this cause for want of jurisdiction in this court and of ultimately retaining and exercising jurisdiction in Spence v. Fenchler, supra, taken together, would be to affirm the correctness of both phases of that proposition.

I regard the latter phase of said proposition, relative to County Court cases, as radically unsound. I cannot rid my mind of the conviction that if said statutory provisions, upon their face, or by necessary implication, confer upon the Supreme Court jurisdiction in such District Court cases, they likewise, and for the same reason, confer upon the Supreme Court jurisdiction in such County Court cases.

It is deeply significant, I think, that, in defining the classes of interlocutory orders or judgments from which appeals may be taken thereunder article 4644 includes *in a single expression* both District Courts and County Courts, and that likewise in each provision therein relating to such appeals, whether referring to *practice* or to *jurisdiction,* article 4645 includes, *in a single expression,* both Courts of Civil Appeals and Supreme Court, and that this is also true of article 4646.

The fact stated relating to *trial courts* strongly indicates that, as between District Courts and County Courts, no distinction or discrimination as to *the right of appeal,* was contemplated; and said corresponding and complementary fact, relating to *appellate courts,* as strongly indicates that, as between the Court of Civil Appeals and the Supreme Court, no distinction or discrimination as to *practice* was intended; and those two facts, mutually complementary in their very nature, as strongly indicate that, as between the *Courts of Civil Appeals and the Supreme Court,* no distinction or discrimination as to *jurisdiction* was intended or contemplated by the Legislature; and all those facts taken together as strongly indicate that, on the contrary, the legislative intent and purpose was that, under uniform rules of practice, all such orders and judgments should be subject to review, in turn, by the Court of Civil Appeals and by the Supreme Court.

That, in substance, is what articles 4644-4645-4646 say, and that is what I think they mean. My construction of those articles renders, or, rather, leaves them intelligible and consistent throughout; but it seems

to me that the construction which my associates have put upon them, with the assertion that it is obviously correct, does not.

Those cogent facts, which the foregoing analysis of said articles develops, certainly strongly tend to support my conclusion, and I think they force it, to the exclusion of every other hypothesis.

As above indicated, "the case" referred to in articles 4645-4646, is the appeal from any such order or judgment of only a County Court or judge thereof, or of a District Court, or judge thereof. Article 4645 declares that "the case may be heard in the said courts," which means that *any such case* may be heard in the Supreme Court, as well as in the Court of Civil Appeals. The provisions of article 4646 likewise say and mean that on motion any such case shall be "advanced" in the Supreme Court, as well as in the Court of Civil Appeals.

Who can confidently say that this provision that *all such cases may be heard in the Supreme Court* is not *jurisdictional* in nature, purpose and legal effect? So, also, as to the provision in article 4646 for advancing all such cases in the Supreme Court. I cannot so say, especially in view of the broad and unrestricted declaration in the caption of said original Act of 1907, page 206, that one of its purposes was to provide *"for appeals* from judgments or orders of *trial* courts in such cases," and in view of the declarations in the caption of said Act of 1909, page 354, that one of its purposes was to provide *"for appeals* from the orders and decrees of District and County Courts either granting or refusing temporary injunctions," and that another of its purposes was to repeal all laws in conflict therewith.

The authority of the Legislature to confer upon the Supreme Court jurisdiction over *all such interlocutory appeals,* regardless of what court had original jurisdiction, exclusive or concurrent, was ample, and stands unquestioned. As to the policy involved in so doing, that, of course, is a matter of purely legislative and not judicial concern.

I am confident that upon articles 4644-4645-4646, *alone,* and without reference to article 1591, the conclusion that this court is without jurisdiction in this case can not be logically predicated. In fact, I apprehend that there can not reasonably exist any substantial difference of opinion upon that point; and none is suggested by said motion to dismiss, nor yet by said majority opinion herein, which, as stated above and as therein expressly declared, is based solely upon the effect given by my associates to article 1591, which they held to be of controlling force. Now, I do not concede or believe that any recognized principle or rule of statutory construction requires or authorizes this court to construe articles 4644-4645-4646 in connection with article 1591—an earlier and more general statute—or justifies the action of my associates in giving the earlier statute such controlling effect. The rule upon which they rely, as laid down in said opinion in Cole v. State, *supra,* to which they refer as the basis for their decision herein, has, in my estimation, no proper application to, or bearing upon, this jurisdictional issue in this cause, or to the construction and application of any two utterly inconsistent and irreconcilable laws, such as articles

4644-4645-4646 and article 1591 clearly are. Such irrepressible conflict between said later and more specific injunction statutes with said earlier and more general statutes relating to the conclusiveness of judgments of Courts of Civil Appeals can not be reasoned away under technical rules of construction, which, after all, were designed merely to ascertain the legislative purposes—the very things which I doubt not I have already found, in this instance, without the aid of such rules. Heretofore, in this State and elsewhere, the settled and uniform rule has been that where such conflict exists the later law prevails. I think we should stay in sight of that towering ancient landmark.

At an early day this court, through Wheeler, J., said in Bryan v. Sundburg, 5 Texas, 423: "'Affirmatives in statutes that introduce a new rule imply a negative of all that is not within the purview.' . . . Again, 'if a subsequent statute be not repugnant in all its provisions to a prior one, yet, if the latter statute was clearly intended to prescribe the only rules which should govern, it repeals the prior one.' (3 How. U. S. R., 636.) So a subsequent statute revising the subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former to the extent to which its provisions are revised and supplied. (1 Ashm. R., 179.) . . .

"It undoubtedly is true that a construction which repeals former statutes by implication is not to be favored; and it is also true that statutes in *pari materia* and relating to the same subject are to be taken and construed together, because it is to be inferred that they had one object in view, and were intended to be considered as one entire and harmonious system. But when the new statute in itself comprehends the entire subject and creates a new, entire, and independent system respecting that subject matter, it is universally held to repeal and supersede all previous systems and laws respecting the same subject matter," citing authorities.

See, also, State of Texas v. Travis County, 85 Texas, 435, 21 S. W., 1033; Ex parte Vaccarezza, 52 Texas Cr., 311, 106 S. W., 392, and authorities there cited.

In enacting articles 4644-4645-4646 and the earlier Acts of 1907 and 1909 on which they were based, the Legislature must have known that they were not in harmony with various other statutes and were in direct conflict with some.

The entire plan of allowing appeals from orders or judgments granting, refusing or dissolving temporary injunctions involved a distinct departure from the ancient policy of our laws, and was out of harmony with the provisions of our statutes relating to appeals which, for the most part, were restricted to review of "final judgments," an exception being found in the provisions of the above quoted article 1383, authorizing an appeal from "an interlocutory order of the District Court appointing a receiver or trustee in any cause." Another innovation was the authorization of appeals from such orders and judgments when made in vacation.

The provisions of these statutes regulating *practice* in such inter-locutory appeals plainly conflict with various general provisions of law relating to practice on appeals in the Court of Civil Appeals and in the Supreme Court, in cases of different nature, and yet several Courts of Civil Appeals and this court have held them operative, in derogation of said general provisions, the supporting theory being, doubtless, that to the extent of conflict, these more specific and later statutory pro-visions regulating practice should control said more general and earlier provisions relating to practice, no attempt to reconcile them being made, so far as I now recall. Ft. Worth Imp. Dist. v. City of Ft. Worth, *supra*.

These statutes concerning interlocutory appeals in injunction cases, from caption to emergency clause, evidence a determination upon the part of the Legislature to give the whole subject bold, and, in many respects, original, not to say heroic, treatment.

Under such circumstances is it unreasonable for this court to assume that the Legislature meant what it said when it declared that "the case may be *heard* in the said courts," thereby including the Supreme Court, which was specifically mentioned in the next preceding clause? I think not. That provision, even if construed and applied as con-ferring upon the Supreme Court appellate *jurisdiction* over all such interlocutory appeals in *all such cases,* whether they be District Court cases or County Court cases, conflicts with article 1591, subdivision 1, no more than do other provisions of articles 4644-4645-4646 relating to *practice* in all appellate courts conflict with other earlier laws govern-ing practice in those courts.

And even if construed and applied as conferring upon this court jurisdiction over such interlocutory appeals in *District Court* cases (as they must be to support jurisdiction of this court in Spence v. Fenchler, *supra*), but in *District Court cases only,* articles 4644-4645-4646 are as completely and as certainly in conflict with article 1591, subdivision 6, as they are in conflict with article 1591, subdivision 1, under my above stated construction of articles 4644-4645-4646.

Consequently, if subdivision 1 or subdivision 6 of article 1591, or both, deprive the Supreme Court of appellate jurisdiction over this County Court case, despite articles 4644-4645-4646, then, and for the same reason subdivision 6 of article 1591 deprives this court of juris-diction in each and every interlocutory appeal in even District Court cases; and the converse of this proposition is necessarily true. Said subdivision 6 embraces all *"interlocutory appeals" whatsoever* and said subdivision 1 includes all such "county court" cases; hence subdivision 6 and subdivision 1 conflict, alike and to the same unlimited extent, with articles 4644-4645-4646. Both or neither controls articles 4644-4645-4646.

Practically applied, that necessarily means that if the order dismiss-ing this cause for want of jurisdiction be right, our order granting a writ of error in Spence v. Fenchler was wrong; and, conversely, if this

court has jurisdiction in that District Court case, it has jurisdiction in this County Court case. .

So, upon the whole, I think that, as to all these conflicts between articles 4644-4645-4646 and other and earlier laws, including article 1591, whether such conflict affects the *right of appeal* or *practice,* or both, or *jurisdiction,* or all three, should be applied, alike, the time-honored rule that where such conflict exists the more specific and later statute must prevail.

So far the majority of this court, in working under articles 4644-4645-4646, in the cases mentioned, have applied that rule to such conflicts relating to *practice,* but have declined to apply it to such conflicts relating to the *jurisdiction* of this court.

The analysis of this jurisdictional issue may be stated, briefly, thus:

(a)    Articles 4644-4645-4646 plainly recognize and, by necessary implication, if not expressly, provide that interlocutory appeals from orders, or judgments of *some* trial court, or courts, granting, refusing or dissolving temporary injunctions may go from Courts of Civil Appeals to the Supreme Court. In support of that proposition are the following facts:

Only upon the theory that *some* such appeal may go to the Supreme Court could articles 4645-4646 reasonably undertake to regulate practice in that court in such appeals.

If there is to be no such appeal to the Supreme Court there is no sense whatever in the provisions of article 4645 regulating the *manner* of the hearing of such appeals in that court; if there is to be no hearing at all thereon in that court, the *manner* in which such appeal is to be heard there is not a matter calling for expenditure of legislative time, thought and energy. Likewise, if there is to be no such appeal to the Supreme Court, thereunder, the provision in article 4646 for *advancing* such case in that court is idle folly; if there is to be no such case in that court why provide for *advancing* it and giving it "priority over other cases pending in such court(s)"?

That articles 4645-4646 do effectually regulate the practice in the Supreme Court *in such appeals thereunder as may go to that court* (whatever cases they may be found to be), is the undeniable effect of the unanimous decision of this court in Ft. Worth Imp. Dist. v. City of Ft. Worth, *supra,* because said articles make the practice in the Supreme Court identical with that in the Court of Civil Appeals.

Any such interlocutory appeal as articles 4644-4645-4646 contemplate may go to the Supreme Court must necessarily be through the Court of Civil Appeals, if it is to reach the Supreme Court at all, because said articles so provide, and they are the only statutes which authorize any appeal whatever from interlocutory orders or judgments of any trial court granting, refusing or dissolving a temporary injunction.

(b)    But article 1591 plainly declares in subdivision 6, that in *all* interlocutory appeals the judgments of the Courts of Civil Appeals "shall be final," and, with regard to such cases, expressly provides, in the initial paragraph, that "the judgments of the Courts of Civil Ap-

peals shall be conclusive on the law and fact, nor shall a writ of error be allowed from the Supreme Court."

(c)  There is, therefore, a fundamental and irreconcilable conflict between articles 4644-4645-4646 and article 1591.

(d)  This court should indulge the presumption that in enacting said articles 4645-4646 and said Act of 1909 and said Act of 1907, the three Legislatures were familiar with both the existence and the legal effect of article 1591:

(e)  Consequently, the Legislature, in enacting articles 4644-4645-4646, and the two earlier statutes from which they were taken (both of which were of dates later than is article 1591), could not reasonably have intended or contemplated that they should be construed in connection with, or be controlled by, article 1591.

(f)  It follows, necessarily, that articles 4644-4645-4646 should be construed and applied as they stand, independently, and without regard to article 1591.

(g)  Articles 4644-4645-4646 make absolutely no distinction whatever between such interlocutory appeals in District Court cases and such interlocutory appeals in County Court cases.

(h)  Combining (a) and (g) we have this result:

Since *some* such interlocutory appeals may go to the Court of Civil Appeals and thence to the Supreme Court, and since articles 4644-4645-4646 which, alone, authorize any such interlocutory appeal to that court, make no distinction between such appeals in District Court cases and such appeals in County Court cases, *all* such interlocutory appeals, whether in District Court cases or in County Court cases, may go to the Court of Civil Appeals and thence to the Supreme Court.

(i)  Consequently, as this is such an interlocutory appeal, this court has jurisdiction therein.

In all such interlocutory appeals from District Court or judge thereof, in term time or in vacation, and, likewise, in all such interlocutory appeals from County Court or judge thereof, in term time or in vacation, the broad road of appeal leads, through the Court of Civil Appeals, into the Supreme Court, and the column moves with light equipment and under "hurry orders"; or, rather, I should say that is my individual judgment as to what the law-making department of the government meant should now be the status of such appeals.

Logically, the only escape from that conclusion would be to say that in so far as the provisions of articles 4644-4645-4646 relate to either *jurisdiction* or *practice* in the Supreme Court they are applicable to only such cases of that character as may reach that court upon "certified questions" from the Courts of Civil Appeals,—a thought which has not been suggested heretofore, from any source—and that would be merely begging the question and distorting said articles, because they evidently deal, primarily and exclusively, so far as their express phraseology is concerned, with only *direct* appeals, without once mentioning "certified questions."

Indeed, if the provisions of articles 4645-4646 regulating practice in

the Supreme Court upon such direct appeals are, at all, properly applicable therein to such a case when before the Supreme Court upon certified questions only (as I think they are), they are so applicable, solely as a matter of construction, and only by implication.

It is true that, independently of article 4645, article 4644 does, in express terms, authorize appeals from such interlocutory orders and judgments to the Court of Civil Appeals, but that is not inconsistent but is wholly consistent with what I consider the jurisdictional provision in article 4645, which declares, in substance, that such case "may be heard" in the Court of Civil Appeals and in the Supreme Court, and with the provision in article 4646 to the effect that, upon motion such case shall be advanced and have priority in the Court of Civil Appeals and in the Supreme Court.

A sufficient, although not conclusive, reason for introducing into article 4644 a specific reference to the appeal to the Court of Civil Appeals aside from said jurisdictional provisions of article 4645, consists in the fact that to that provision of article 4644 is appended what amounts to a proviso relating to the effect of such appeal with regard to enforcement, pending appeal, of such order or judgment of the trial court, and also an express proviso limiting the time within which the transcript may be filed.

Certainly said jurisdictional provision of article 4644 does not negative my construction of what I consider the jurisdictional provision of article 4645, as reinforced by article 4646.

Now, having thus ascertained what said articles 4644-4645-4646, in and of themselves, really mean, why should we not assume that the Legislature intended them to have that jurisdictional effect, and apply them accordingly, upon the broad ground that the later and more specific and thrice repeated expressions of the Legislature upon the subject should control, even though it be in derogation of conflicting provisions of earlier statutes? I do not feel free to apply them otherwise.

Referring to defendant in error's foregoing proposition relative to subdivision 6 of article 1591, said motion to dismiss further contends:

"However, even if that portion of the statute be considered repealed by implication, in view of the substantive law enactment, no jurisdiction can exist in the Supreme Court over a case of such nature for the reason that the Constitution, section 3, article 5, provides that 'the appellate jurisdiction of the Supreme Court shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction, under such restrictions and regulations as the Legislature may prescribe,' and no appellate jurisdiction over interlocutory appeals was vested in the Court of Civil Appeals at the time of the enactment of that article of the Constitution."

The point is that this constitutional provision employs the word "have," the present tense.

The supporting argument in the brief is to the effect that said constitutional provision prohibits the extension of the appellate jurisdiction of the Supreme Court beyond that which the Constitution itself, ex-

pressly and directly, confers upon Courts of Civil Appeals, and that consequently, inasmuch as such jurisdiction over interlocutory appeals was not therein so conferred upon Courts of Civil Appeals, no such jurisdiction can be conferred upon the Supreme Court over interlocutory appeals; wherefore, this being an interlocutory appeal, this court is without appellate jurisdiction herein. The proposition is far-reaching. If it be sound, so much of the provisions of articles 4644-4645-4646 as attempt to confer upon the Supreme Court appellate jurisdiction over all and any such interlocutory appeals as are therein authorized are unconstitutional and void.

But that entire argument is certainly unsound, because it rests on a faulty premise. The word "have," as here used, should be given a prospective meaning and application; the prescribed test should be applied when the appellate jurisdiction of this court is invoked, in the particular case. The appellate jurisdiction of the Court of Civil Appeals, in a given case, should be ascertained from constitutional and statutory provisions in force at the date of such test.

That same article 5 of our Constitution, in section 6, after providing for the creation of Courts of Civil Appeals, defines their jurisdiction thus: "Said Courts of Civil Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all civil cases of which the District Courts or County Courts have original jurisdiction, under such restrictions and regulations· as may be prescribed by law. · . . . Said courts shall have such other jurisdiction, original and appellate, as may be prescribed by law." Here the words "may be" plainly relate to the future. Long v. State, 1 Texas App., 709; Ex parte Coombs, 38 Texas App., 648, 44 S. W., 860; South Carolina v. Gaillard, 101 U. S., 433, 25 Law. Ed., 937; Shoemaker v. Smith, 37 Ind., 122; Ihmsen v. Nav. Co., 32 Pa. (8 Casey), 153.

Said clause of section 3 of said article 5, which extends the jurisdiction of the Supreme Court to "questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction" was of a permanent nature, and subject to said restrictions and regulations was designed to establish the appellate jurisdiction of this court until said clause of the Constitution shall have been amended by vote of the people themselves, and was so written with full knowledge of the transitory nature of the appellate jurisdiction of Courts of Civil Appeals, and, doubtless, in full contemplation of the fact that there would probably be frequent changes in that jurisdiction, as successive Legislatures might consider expedient, under said section 6. It is almost inconceivable, then, that, under such circumstances, those who framed said judiciary article, or that the people, in voting for its adoption, intended to permanently limit· the jurisdiction of the Supreme Court to cases over which the Courts of Civil Appeals *then* had appellate jurisdiction, thereby permanently excluding from the jurisdiction of the Supreme Court all other classes of cases in which appellate jurisdiction might be given, *thereafter,* by statute, to Courts of Civil Appeals. On the contrary, the manifest purpose in its adoption was to provide that the

appellate jurisdiction of the Supreme Court may be changed by the Legislature, from time to time, to correspond to the changing appellate jurisdiction of those intermediate appellate tribunals. The rules of construction which defendants in error here and elsewhere in said motion, urge upon this court are too restrictive for the construction of even a statute, and are far too narrow and too technical to apply to a constitutional provision defining jurisdiction of courts. Schintz v. Morris, 89 Texas, 648, 35 S. W., 1041.

In support of its argument upon section 3 said motion cites: Williamson v. Lane, 52 Texas, 335; Wright v. Fawcett, 42 Texas, 203; Rogers v. Johns, 42 Texas, 339; Ex parte Towles, 48 Texas, 413. I am unable to see that any of the said cited cases has any fair application whatever to the point under discussion. Williamson v. Lane, *supra,* upon which chief reliance seems to be placed, in said motion, was a suit contesting an election, in which this court held that it was not a "civil case," and therefore was not within its jurisdiction, which was, at that time, restricted by section 3 of article 5 of our Constitution, as it then stood, to "civil cases of which the District Courts have original or appellate jurisdiction." The question turned, not on the signification of the word "have,"—whether present or prospective,—but upon the meaning of the term "civil causes." Each of the other three cases so cited, *supra,* likewise involved a contest of an election. So far as I am aware there is neither reason nor authority to support this feature of said motion.

It is also asserted by said motion to dismiss:

"The question of whether or not the articles claimed as exempt by plaintiff in error were tools or apparatus was a question of fact to be determined from the evidence, and the Court of Civil Appeals having found that said articles were not the tools and apparatus belonging to the trade of a butcher within the meaning of the exemption statute, this finding is conclusive and can not be reviewed by the Supreme Court."

That contention is not supported by the "statement" which follows it, in said motion, or by the statement and findings of fact set out in the opinion of the Court of Civil Appeals. On the contrary, said opinion expressly declares that if the question were an open one in this State that court would hold that the ice box, or refrigerator, was exempt from forced sale, although they did not consider the cash register exempt; yet, because they considered the question of law as to the ice box settled, favorably to the execution creditor, by the decision of this court in Simmang v. Insurance Company, 102 Texas, 39, 132 Am. St., 846, 112 S. W., 1044, they vacated, herein, the order of the trial court which had granted a temporary injunction against the sale of either of said articles. So it is obvious that the issue here, *upon the merits,* is one of law rather than of fact.

True, said article 1590 declares, "the judgment of the Courts of Civil Appeals shall be conclusive in all cases on the facts of the case," and the Supreme Court never disturbs their findings of fact when there is any evidence to support them; but this court would not vary from that

rule or disregard said statute in entertaining jurisdiction herein, under this application for writ of error, the real status of the matter being that in applying our exemption statute to the established facts of this case the Court of Civil Appeals erred as to the effect of said decision in the Simmang case, and cases therein cited, and, consequently, erred in its judgment herein. If of the opinion that said Court of Civil Appeals did so err, the Supreme Court would be clearly within its jurisdiction in granting the writ of error, and, for reasons mentioned below in discussing the merits of this appeal, that jurisdiction should as certainly be retained, for the purpose of correcting such error, all unless, upon some other ground, it is without jurisdiction; and I have found none.

The final contention in said motion to dismiss is: "This case is not one in which it can by proper application for writ of error be made to appear that the Court of Civil Appeals has erroneously declared the substantive law, as the question involved in this case is not open and undetermined, but has been definitely settled by the Supreme Court."

As the facts and circumstances do not involve the point, I do not feel called upon to say, here, whether this court should or should not refuse to entertain jurisdiction in a given case falling under subdivision 6 of article 1521, as amended by said Act of 1913, page 107, solely because the question of "substantive law" involved therein had previously been expressly decided by this court. However, in that connection see City of San Antonio v. Tobin, 100 Texas, 589, 102 S. W., 403.

For the purpose of said motion it is sufficient to say that I do not consider that the material question of substantive law which is involved in the case at bar has ever been authoritatively decided by this court. My views as to the effect of the Simmang case, and of certain cases therein cited, appear more fully in the subjoined discussion of this appeal, "on the merits." I think said motion to dismiss should be overruled.

### ON CROSS ASSIGNMENT QUESTIONING JURISDICTION.

After strenuously combating said motion to dismiss, plaintiff in error presents a cross assignment which places him in the inconsistent attitude of denying, after having invoked, the jurisdiction of the Supreme Court in this cause.

The contention so made is that the County Court at Law of Harris County, in which this cause originated, is not one of the courts mentioned in, or known to, sections 15 and 16 of article 5 of the Constitution of Texas, but is a special tribunal, and over its orders and judgments the Courts of Civil Appeals have not been given appellate jurisdiction by the Constitution or by any statute; consequently, no such jurisdiction exists, and the Court of Civil Appeals was without authority to vacate said order granting a temporary injunction restraining sale of said property.

The application lies in the fact that unless the Court of Civil Appeals

had appellate jurisdiction in the case at bar the Supreme Court has none, the appellate jurisdiction of the Supreme Court being expressly restricted by the Constitution to "questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction." Constitution, art. 5, sec. 3, *supra;* Schintz v. Morris, 89 Texas, 648, 35 S. W., 1041.

At an early date this court said: "In the present case the objection to the jurisdiction could not avail appellants, as they brought the appeal in this court and compelled him to answer to the appeal." Hunter and Hyde v. Oelrich, Dallam, 358. But an expression upon that aspect of the matter seems not to have been necessary to a disposition of that cause, and, in any event, the contrary rule that lack of jurisdiction is fatal at any stage of court proceedings, whenever and however suggested by any party, or whether so suggested or not, now prevails. Evans v. Piggs, 28 Texas, 586; Burks v. Bennett, 55 Texas, 237; Smith & Williams v. Parks, 55 Texas, 82; Chicago, B. & Q. Ry. Co. v. Willard, 220 U. S., 413, 55 Law. Ed., 521, 31 Sup. Ct., 460.

In the first cited case it was said: "Questions which involve the jurisdiction of the court will, of course, be considered at any time that they may come to our notice, however great the lapse of time may have been after docketing the cause in this court, and whether raised by motion to dismiss or brought to our attention in any other way."

In the last cited case it was said: "On every writ of error or appeal the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it."

In 1911 the Legislature enacted a statute which contains the following, among other, provisions:

"Section 1. That there is hereby created a court to be held in Harris County, to be called the County Court of Harris County for Civil Cases.

"Sec. 2. The County Court of Harris County for Civil Cases shall have jurisdiction in all civil matters and causes, original and appellate, over which, by the general laws of the State of Texas, the County Court of said county would have jurisdiction, except as provided in section three (3) of this Act. . . .

"Sec. 3. The county judge (court) of Harris County shall retain as heretofore, the general jurisdiction of a probate court; it shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards, grant letters testamentary and of administration, settle accounts of executors, administrators and guardians, transact all business pertaining to deceased persons, and to hear and determine all matters affecting juvenile offenders, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the settlement, partition and distribution of estates of deceased persons, and shall have jurisdiction to hear and determine all matters relating to or arising out of the granting or revoking of liquor licenses, and all

matters appertaining thereto; and to apprentice minors as provided by law, and the said court, or the judge thereof, shall have the power to issue writs of injunction, mandamus, and all writs necessary to the enforcement of the jurisdiction of said court, and also to punish contempts under such provisions as are or may be provided by general law governing County Courts throughout the State; but said County Court of Harris County shall have no other jurisdiction, civil or criminal. . . ." (Gen. Laws, 1911, chap. 4.)

By chapter 8 of the General Laws of 1913 it was provided as follows:

"Section 1. The County Court of Harris County for Civil Cases shall hereafter be known as the County Court at Law of Harris County, Texas." . . .

"Section 3. The said court to be hereafter known as the County Court at Law for Harris County shall have all the jurisdiction heretofore conferred upon it under the name of the County Court of Harris County for Civil Cases, and its judge shall have all the power heretofore conferred upon the judge of the County Court of Harris County for Civil Cases; and in addition to the said jurisdiction the said County Court at Law of Harris County shall have all of the, and the same jurisdiction over criminal matters that is now vested in the County Courts having jurisdiction in civil and criminal cases under the Constitution and laws of Texas, and all appeals from justices, mayors, recorders, or other inferior courts within Harris County, shall hereafter lie to said County Court at Law of Harris County instead of as heretofore, to the Criminal District Court of Harris County, and the judge of said court shall have, in addition to the powers now conferred upon him, the same powers, rights and privileges, as to criminal matters as are now vested in and enjoyed by the judges of County Courts having criminal jurisdiction; provided, however, that said court shall have no jurisdiction over any of those matters the jurisdiction over which is now in the County Court of Harris County or the judge thereof."

Neither of said statutes made any express mention of the matter of appeals, and, so far as I have been able to find, no statute has undertaken to expressly provide for appeals from either of the two last mentioned courts or from any court similarly created or designated, such as the Dallas County Court at Law (Rev. Stats., 1911, arts. 1786-1798), or the County Court of Tarrant County for Civil Cases (Rev. Stats., 1911, arts. 1799-1811), or the County Court of Bexar County for Civil Cases (Acts 1911, chap. 10), *eo. nomine.*

The appellate jurisdiction of our Courts of Civil Appeals is defined by the Constitution as extending to "all civil cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law" and such other appellate jurisdiction "as may be prescribed by law." (Const., art. 5, sec. 6.)

Appeals from "County Courts" have been thus provided for by statute: (a) "Art. 2078. An appeal or writ of error may be taken to the Court of Civil Appeals from every final judgment of the District Court

in civil cases and from every final judgment in the County Court in civil cases of which the County Court has original jurisdiction, and from every final judgment of the County Court in civil cases of which the court has appellate jurisdiction, where the judgment or amount in controversy exceeds one hundred dollars, exclusive of interest and costs." Rev. Stats., 1911 (Acts 1892, 1 S. S., p. 43).

But it will be observed that article 2078 relates to "final judgments" only, and for that reason, if for none other, that article can not apply to the order granting a temporary injunction from which this appeal was taken.

(b)   "Art. 1589.   The appellate jurisdiction of the Courts of Civil Appeals shall extend to civil cases within the limits of their respective districts:

"1.   Of which the District Courts have original or appellate jurisdiction.

"2.   Of which the County Court has original jurisdiction.

"3.   Of which the County Court has appellate jurisdiction when the judgment, or amount in controversy, or the judgment rendered, shall exceed one hundred dollars, exclusive of interest and costs."   Rev. Stats.; 1911 (Acts 1892, 1 S. S., p. 26).

The phraseology of article 1589 seems broad enough to include, under subdivision 2 thereof, all civil cases of which the County Court has original jurisdiction, there being therein no express restriction, such as is set out in article 2078, limiting its application and effect to final judgments; yet that restriction evidently must be read into said article 1589, because the original statutes from which articles 1589 and 2078, respectively, were taken were both enacted by the same Legislature as part of one general plan for putting into effect said amendments of article 5 of the Constitution, relating to the judiciary, and were approved on the same day, and by their terms were expressly made effective on September 1, 1892, and must, therefore, be construed together.

In other words, neither article 2078 nor article 1589 authorizes an appeal from an interlocutory order or judgment; wherefore, this being an interlocutory appeal, neither of those articles confers upon the Court of Civil Appeals appellate jurisdiction herein.   Waters-Pierce Oil Co. v. State, 106 S. W., 329; Trammel v. Rosen, 106 Texas, 132, 157 S. W., 1161.

However, whatever may be thought or held as to their effect, or want of effect, upon the jurisdiction of the Supreme Court, it is obvious that said articles 4644-4645-4646 do, plainly, confer such jurisdiction upon the Courts of Civil Appeals over all such interlocutory orders or judgments of "County Courts" granting, refusing or dissolving temporary injunctions.

So, whether said provisions of articles 4644-4645-4646, as related to the appellate jurisdiction of the Courts of Civil Appeals, do or do not apply to the order of said new tribunal granting said temporary injunction in this cause depends, in its last analysis, upon whether that tribunal is or is not a "County Court" within the meaning of said article

5, sections 15 and 16, of our Constitution, and within the meaning of said articles 4644-4645-4646. If it is such County Court, the jurisdiction of the Court of Civil Appeals over this cause was too plain for further question.

It is urged, under said cross assignment, that the "County Courts" to which said section 6, article 5, refers are those, and only those, which are dealt with in sections 15 and 16 of said article 5, as follows:

"Sec. 15.    There shall be established in each county in this State a County Court.   .   .   .

"Sec. 16.    The County Court shall have original jurisdiction of all misdemeanors of which exclusive original jurisdiction is not given to the Justice's Court as the same is now or may hereafter be prescribed by law, and when the fine to be imposed shall exceed $200, and they shall have exclusive jurisdiction in all civil cases when the matter in controversy shall exceed in value $200, and not exceed $500, exclusive of interest, and concurrent jurisdiction with the District Court when the matter in controversy shall exceed $500, and not exceed $1000, exclusive of interest, but shall not have jurisdiction of suits for the recovery of land.    They shall have appellate jurisdiction in cases, civil and criminal, of which Justice's Courts have original jurisdiction, but of such civil cases only when the judgment of the court appealed from shall exceed $20, exclusive of cost, under such regulations as may be prescribed by law.    In all appeals from Justice's Courts there shall be a trial de novo in the County Court, and appeals may be prosecuted from the final judgment rendered in such cases by the County Court, as well as all cases, civil and criminal, of which the County Court has exclusive or concurrent or original jurisdiction of civil appeals in civil cases to the Court of Civil Appeals, and in such criminal cases to the Court of Criminal Appeals, with such exceptions and under such regulations as may be prescribed by law.

"The County Court shall have the general jurisdiction of a probate court; they shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis and common drunkards, grant letters testamentary and of administration, settle accounts of executors, transact all business appertaining to deceased persons, minors, idiots, lunatics, persons non compos mentis and common drunkards, including the settlement, partition and distribution of estates of deceased persons and to apprentice minors, as provided by law; and the County Court, or judge thereof, shall have power to issue writs of injunction, mandamus and all writs necessary to the enforcement of the jurisdiction of said court, and to issue writs of habeas corpus in cases where the offense charged is within the jurisdiction of the County Court, or any other court or tribunal inferior to said court."

In the argument under said cross assignment it is said:

"The Act of Legislature adopted, 1911,   .   .   .   created a Special Court in Harris County, Texas, for trial of certain causes.    To do this it carved from jurisdiction of the County Court of Harris County all of its jurisdiction except probate matters.   .   .   .   In 1913 the Legis-

lature by an Act amended the Act creating this court, by enlarging the
name . . . and carving from the Criminal District Court of Harris
County its jurisdiction of misdemeanor criminal cases, leaving the
County Court with juvenile delinquent cases and probate matters."

The contention of the plaintiff in error, as I understand it, is that
this new tribunal is not a "County Court" within contemplation of said
constitutional and statutory provisions concerning appeals (Const., art.
5, sec. 3, Rev. Stats., 1911, art. 1589), because by the statutes upon
which its very existence depends, that tribunal was denied jurisdiction
in probate matters, which jurisdiction said section 16 of article 5 con-
ferred upon the "County Court of Harris County." I am unable to
appreciate the distinction which, apparently, is thus sought to be drawn
between the authority of the Legislature to confer upon said new tri-
bunal jurisdiction in probate matters,—which authority is, practically,
thus denied by plaintiff in error, and the authority of the Legislature
to confer upon such new tribunal the jurisdiction with which said Act
of 1913, chapter 8, attempts to clothe it,—which authority is, practically,
thus admitted by plaintiff in error.

If, as seems to be assumed in the argument in support of said con-
tention, the County Court of Harris County was the one and only
"County Court" which could exist in that county, because it was the
only court in that county upon which the Constitution directly con-
ferred probate jurisdiction, it would logically follow, it seems to me,
that, for a like reason, it was beyond the power of the Legislature to
change or disturb that arrangement and confer upon said new tribunal
any of the jurisdiction which our Constitution, by said section 16 of
article 5, conferred upon the County Court of Harris County; yet said
Act of 1913 evidently undertook to do that very thing. Were the pro-
visions of that statute which relate to jurisdiction within the constitu-
tional powers of the Legislature?

I think they were. Section 1 of article 5 of our Constitution, as
amended in 1891 and now in force, provides: "The judicial power of
this State shall be vested in one Supreme Court, in Courts of Civil
Appeals, in a Court of Criminal Appeals, in District Courts, in County
Courts, in Commissioners Courts, in courts of justices of the peace, and
in such other courts as may be provided by law." The Constitution of
1876, which was then being amended, had likewise vested the judicial
power of the State in certain enumerated courts "and in such other
courts as may be established by law." Not content with that, however,
said amendment of 1891 also declared, in said section 1: "The Legis-
lature may establish such other courts as it may deem necessary and
prescribe the jurisdiction and organization thereof, and may conform
the jurisdiction of the District and other inferior courts thereto."

The various amendments of said article 5, as made in 1891, were
designed to entirely remove certain irksome restrictions upon the power
of the Legislature relating to the judiciary, and within the limits de-
fined by the above quoted amended sections and other portions of said
judiciary article (V), and with the restrictions therein specified, to

more fully and permanently authorize the Legislature to provide, from time to time, courts of the grade of Courts of Civil Appeals, and of inferior grades, and of kinds, and with jurisdiction and powers, adequate to meet the expanding necessities and desires of a great and rapidly developing people, in a State of amazing territorial extent, with wonderful diversity of interests, and to properly define and establish the jurisdiction of all such courts, and to conform thereto the jurisdiction of District Courts and of the very "County Courts" which are mentioned in sections 15 and 16 of said article 5; and, within those limits, and subject to those restrictions, the whole matter of such courts and their jurisdictions, both original and appellate, was thereby thrown open by the Constitution to the judgment and action of the legislative department.

Section 8 of article 5 specifically defines the jurisdiction of District Courts; yet this court has repeatedly held that our present Constitution permits and authorizes the Legislature to establish, in one county, two or more District Courts. Lytle v. Halff & Bro., 75 Texas, 129, 12 S. W., 610; Wheeler v. Wheeler, 76 Texas, 489, 13 S. W., 305; Railway Co. v. Hall, 98 Texas, 486, 85 S. W., 786. See also Harris County v. Steward, 91 Texas, 133, 41 S. W., 650; Ex parte Wilbarger, 41 Texas Cr., 514, 55 S. W., 696; Kruegel v. Daniels, 50 Texas Civ. App., 215, 109 S. W., 1108; Kruegel v. Murphy, 126 S. W., 143, and other cases cited in (6) and (8), p. 357, of Harris' Constitution of Texas.

Such District Courts may have all the jurisdiction defined by said section 8, or only so much thereof as the Legislature may see fit to confer upon them. Maddox Bros. & Anderson v. Covington, 87 Texas, 454, 29 S. W., 465.

I see no reason why the same theory of construction should not be applied to said provisions of sections 15 and 16 of article 5, relating to County Courts, at least in so far as they affect the constitutionality and validity of the County Court at Law of Harris County, as it now exists, with the jurisdiction which the Legislature has undertaken, thus far, to confer upon it.

In other words, I am of the opinion that the Legislature clearly had power and authority, not only to create said new tribunal, but also to confer upon it the jurisdiction and powers which said Acts of 1911 and 1913 undertook to bestow upon it, even though much such jurisdiction and powers were thereby withdrawn from the "County Court of Harris County"; and, since said new tribunal thereby became invested with extensive powers and jurisdiction which had been originally and directly assigned by said section 16 of article 5 to the "County Court," said new tribunal thereby and thereupon became, and is, practically, and to all intents and purposes a *"County Court,"* within contemplation of said constitutional and statutory provisions authorizing and regulating appeals from "County Courts" to Courts of Civil Appeals.

In the language of our present distinguished Chief Justice: "It is the policy of the Legislature and of the courts to construe liberally all

provisions of the statutes so as to secure the right of appeal." Hamill v. Samuels, 104 Texas, 46, 133 S. W., 419.

And inasmuch as said new tribunal is a County Court within the meaning of said constitutional provisions and of articles 4644-4645-4646, *supra,* and has original jurisdiction to grant the temporary injunction from which this appeal was taken, said articles 4644-4645-4646 are applicable to this case, and confer appellate jurisdiction therein upon said Court of Civil Appeals. Consequently, if the Supreme Court has jurisdiction herein, as I think it has, said cross assignment should be overruled. In any event it is without merit.

### ON THE MERITS.

The statute under which exemption from execution was claimed in this case appears in Revised Statutes, 1911, as article 3785. See, also, article 3788, which declares like exemptions for the benefit of "persons who are not constituents of a family."

Exemption statutes should be construed liberally, and with respect to the vocations of the owners of property, to give effect to their spirit and purpose.

Webster's New International Dictionary defines "apparatus" thus: "From 'apparare,' . . . to prepare. 1. A making ready. 2. Things provided as means to some end. 3. Hence: a collection or set of implements, or utensils, for a given work, experimental or operative; any complex instrument or appliance, mechanical or chemical, for a specific action or operation; machinery; mechanism."

In a mortgage by an electric light company of its buildings, machinery, tools, instruments and apparatus, "apparatus" was held broad enough to include lamps. Ramsdell v. Power Co., 103 Mich., 89, 61 N. W., 275.

"Trade" has been defined to denote "the business or occupation which a person has learned, and which he carries on for procuring subsistence or for profit—particularly a mechanical employment, distinguished from the liberal arts and learned professions, and from agriculture." Freeman on Executions, vol. 2, sec. 226, p. 1215 "Under the statutes exempting the tools of a debtor's trade, the term 'trade' is frequently, although by no means universally, construed to mean the kind of employment in which mechanics, artisans, and handicraftsmen are engaged." 18 Cyc., 1415. It has been held that the word "trade," in its broad and general sense "covers and embraces all occupations in business with the possible exception of the learned professions, and those that pertain to liberal arts and the pursuit of agriculture." For a valuable discussion of the meaning of the words "apparatus," "tools" and "trade" as used in said statute, I refer to the opinion of the Court of Civil Appeals for the Third Supreme Judicial District, by Chief Justice Fisher, in Betz v. Maier, 12 Texas Civ. App., 219, 33 S. W., 710-711, and authorities cited.

A hotel-keeper was permitted to hold, as exempt, as a "tool or implement" of his trade, an omnibus used in carrying on his business. White v. Gemeny, 47 Kan., 741, 27 Am. St. Rep., 320, 28 Pac., 1011.

In Massachusetts, where a jeweler carried on his trade with the aid of an apprentice, and that portion of the tools used by the latter was levied upon, the court held them to be exempt, saying: "The exemption is not limited merely to the tools used by the tradesman with his own hands, but comprises such, in character and amount, as are necessary to enable him to prosecute his appropriate business in a convenient and usual manner; and the only rule by which it can be restricted is that of good sense and discretion, in reference to the circumstance of each particular case. It would be too narrow a construction of a humane and beneficial statute to deny to tradesmen—whose occupation can hardly be prosecuted at all, much less to any profitable end, without the aid of assistance, as journeymen and apprentices—the necessary means of their employment." Howard v. Williams, 2 Pick., 83.

The Supreme Court of New Hampshire said: "The word 'tools,' as used in these statutes, is presumed to embrace such implements of husbandry, or of manual labor, as are usually employed in and are appropriate to the business of the several trades or classes of the laboring community, and according to the wants of their respective employments or professions." Wilkinson v. Alley, 45 N. H., 551.

"Working tools" include, in addition to those which are absolutely necessary, and those in ordinary use by a mechanic, such others as are reasonably necessary to enable him to prosecute his business advantageously and usefully. Healy v. Bateman, 2 R. I., 454, 60 Am. Dec., 94.

A printer's press, cases, type, etc., have been held exempt under our statute. Green v. Raymond, 58 Texas, 80, 44 Am. Rep., 601; St. Louis Type Foundry v. Pub. Co., 74 Texas, 651, 15 Am. St., 870, 12 S. W., 842; St. Louis Type Foundry v. Taylor, 35 S. W., 691; Harris v. Townley, 161 S. W., 5.

The business of conducting a bakery was held to be a "trade." In re Peterson, 95 Fed., 417. A meat market business is generally treated as a "trade." Green v. State, 56 Ark., 386, 19 S. W., 1055. The business of butcher and meat cutter was treated as embracing two "trades," in Cable v. Hoolihan, 98 Minn., 143, 107 N. W., 967, 116 Am. St., 348.

In the opinion in the case at bar the Court of Civil Appeals said, very forcibly:

"We think conducting a butcher shop as appellee did his should be regarded as a trade in the purview of the statute before cited. It requires mechanical skill and experience to conduct a shop of this kind and a person so engaged is following a trade. The fact that he sold the meat which he cut up or butchered would not make him merely a merchant or dealer in meats and defeat his right to claim as exempt from forced sale the tools and apparatus belonging to his trade as butcher or meat cutter. Any tools or apparatus belonging to this trade would be exempt; but a tool or apparatus belonging to and used only in his business of selling meat would not be exempt. Bequillard v. Bartlett, 19 Kan., 382, 27 Am., 120. . . . But we do not think a cash register under any proper construction of the statute could be called a tool

or apparatus belonging to the trade of a butcher. Wallace v. Bartlett, 108 Mass., 52; Bequillard v. Bartlett, 19 Kan., 382, 27 Am., 120; McCord-Collins v. Lazarus, 50 S. W., 1048; Smith v. Horton, 19 Texas Civ. App., 61, 46 S. W., 402."

I think those views are correct. As suggested by Associate Justice Rainey in Smith v. Horton, *supra*, the exemption "does not necessarily include every convenience that might be beneficial in carrying on a particular business." In that case this court refused an application for a writ of error.

Upon principle and under the authorities I have no doubt that, under the facts of this case, the ice box, or refrigerator, in which plaintiff in error kept refrigerated meat which he handled and sold in carrying on his trade as a "butcher" was an "apparatus" within the meaning of said statute, and should be held exempt from said execution. See, generally, the following cases and authorities therein cited: Green v. Raymond, 58 Texas, 80, 44 Am., 601; Willis v. Morris, 66 Texas, 628, 59 Am., 634, 1 S. W., 799; Alsup v. Jordan, 69 Texas, 300, 5 Am., 53, 6 S. W., 831; Nichols v. Porter, 7 Texas Civ. App., 302, 26 S. W., 859; Patterson v. English, 142 S. W., 19.

As already indicated the judgment of the Court of Civil Appeals vacating the order granting the injunction restraining the sale, and rendering judgment perpetuating the injunction, was based, at least, as to the ice box or refrigerator, upon what that court considered the controlling effect of the decision of this court in Simmang v. Insurance Company, 102 Texas, 39, 132 Am. St., 846, 112 S. W., 1044, which was to the effect that a "lunch counter, back counter, shelving, safe, stools, fans, cash register, two ice boxes, crockery, tableware, linen," etc., used by a restaurant keeper in conducting his restaurant are not exempt from forced sale as "apparatus" belonging to the trade of a restaurant keeper, although it was "granted," but not expressly held, therein, that such business constituted a "trade."

The Simmang case decision is based on Heidenheimer v. Blumenkron, 56 Texas, 314, in which this court said: "The exemption of 'all household and kitchen furniture' would not include any other than furniture for the family, such as might be on hand and used by it. Household and kitchen furniture used in hotels and restaurants, beyond that which is used by the family, is not included in the exemption. It is not reasonable that one hundred and sixteen mattresses and forty-six bedsteads should be exempted for a private family like that shown by the evidence." In the former case this court said that in the latter "a mortgage had been given upon articles such as were insured in this case," apparently overlooking the fact that the Simmang case included an ice box, which the Heidenheimer case did not, at least so far as the opinion therein discloses the facts. And Dodge v. Knight, 16 S. W., 626, also cited in the Simmang case, likewise involved a claim of exemption under subdivision 2 of the statute, relating to household and kitchen furniture of a family, and the decision therein was based upon the Heidenheimer case, *supra*. The property claimed as exempt was being

used in running a restaurant and included 1 cook stove, 80 dishes, 83 plates, 67 bakers, 1 glass show-case, etc., "none of which was used as such furniture by appellant and family." This court held: "Household and kitchen furniture used for a restaurant, beyond that which is used for a family, is not exempt from attachment," and, further, that if it was exempt, "appellant consented to its seizure." The opinion of the Commission of Appeals in that case, by Hobby, J., which this court approved, does not indicate that the attached property included an ice box or refrigerator. In Frank v. Bean, 3 Ct. of App. C. C., par. 211, also cited in the Simmang case, the decision was likewise based upon said Heidenheimer case, and also involved property which was used "in carrying on the restaurant business," and claimed to be exempt. The opinion of Wilson, P. J., does not disclose the precise character of said property, but in the Simmang case it was referred to as "furniture, dishes, etc.," without mention of any ice box or refrigerator. The Frank case held: "The charge of the court properly instructed the jury that if the property levied upon was household and kitchen furniture it was exempt, but that if it consisted of furniture used in keeping a restaurant, it was not exempt. . . . Such property does not come within the meaning 'tools' or 'apparatus,' as used in the statute of exemptions, and can not be claimed as exempt under that clause of the statute." The common signification of said words does not embrace *furniture* used in hotels and restaurants.

It is obvious that the question of exemption as to the ice box, or refrigerator, was not involved, nor decided, in any of these four cases, unless it was in the Simmang case itself, and it seems reasonably certain that in it the attention of this court was not directed to the ice boxes; and whether, had that been done, that decision, as to the ice boxes, would have been different, it is not necessary now, to say or inquire. And whatever may have been the viewpoint of this court in the Simmang case, I regard it as clear that in the case at bar the ice box or refrigerator is exempt from execution sale, but that the cash register is not.

My general conclusion is that so much of said judgment of the Court of Civil Appeals as relates to the cash register should be affirmed, but that so much of said judgment as relates to the ice box or refrigerator should be reversed, and that so much of the judgment of the trial court as relates to the cash register should be reversed, and so much of that judgment as relates to the ice box or refrigerator should be affirmed, and that this cause should be remanded to said trial court for further proceedings in accordance with the views which are hereinabove expressed.

Opinion filed February 22, 1915.