COMMERCIAL CREDIT CORP. v. PATTERSON et al.

No. 10028.

Court of Civil Appeals of Texas. Austin.

April 2, 1952.

On Motion for Rehearing April 23, 1952.

Supplemental Opinion April 30, 1952.

 

The acts upon which the alleged conversion is based were committed by appellant's agents on December 29, 1949, when they, with the consent of the lessee, M. R. Watson, but over the protest of appellees, took from the leased building certain of the items, listed below,[1] described in appellant's chattel mortgage. At this time delinquent rents were due the landlord in the sum of $1,000.

Mr. Watson, a married man, the owner of the personal property involved and appellee's lessee, was a party defendant who, while he appeared upon the trial, filed no answer and has not appealed.

Following a nonjury trial judgment was rendered for appellees for $1,094.67 ($1,000 plus $94.67 interest from December 29, 1949) actual damages against appellant and Watson, jointly and severally, and for $500 exemplary damages against appellant. Other relief was also awarded appellees against Watson.

Appellant's principal contention, raised by his first point, is that the court erred in holding that appellees were entitled to a landlord's lien on the property removed from the building by appellant because such property is exempt under Section 5 of Article 3832, V.A.C.S., which exempts from forced sale "all tools, apparatus and books belonging to any trade or profession."

Biggers, Baker & Lloyd, Ralph D. Baker, Dallas, for appellant.

Kirby Vance, Grimes & Owen, E. M. Grimes, Taylor, for appellees.

HUGHES, Justice.

This suit was brought by appellees, C. W. and H. N. Patterson, against appellant, Commercial Credit Corporation, for damages, actual and exemplary, for conversion of personal property.

Appellees claimed a prior landlord's lien, statutory and contractual, on the property and appellant claimed under a chattel mortgage lien.

1. 
| Item One: | One Manley chain Hoist (trestle) |
|---|---|
| Item Two: | One spark plug cleaner |
| Item Three: | One pair brake pliers |
| Item Four: | One wheel aligning gauge |
| Item Five: | Three pair Walker car stands |
| Item Six: | One tension wrench |
| Item Seven: | One cylinder truck |
| Item Eight: | One grease gun |
| Item Nine: | One Graco display set |
| Item Ten: | One Black and Decker bench grinder |
| Item Eleven: | One battery kit |
| Item Twelve: | One sander |
| Item Thirteen: | One Bear wheel balancer |
| Item Fourteen: | Office furniture, 2 desks, 4 chairs |
| Item Fifteen: | One steel filing cabinet |
| Item Sixteen: | One jack |
| Item Seventeen: | One air compressor |
| Item Eighteen: | Twenty parts bins |
| Item Nineteen: | One adding machine |
| Item Twenty: | One typewriter |
| Item Twenty-One: | Mercury tools |
| Item Twenty-Two: | Four work benches |
| Item Twenty-Three: | One acetylene welding outfit |
| Item Twenty-Four: | One armature tester |

On January 15, 1949, appellees by written agreement, leased to M. R. Watson a building in Taylor, Texas, for the purpose of lessee conducting therein "an automobile sales agency and automobile repair shop." The term of the lease was from January 15, 1949, through January 14, 1952.

The lease contained this provision:

"Lessors shall have a Landlord's Lien on the stock and fixtures located in said building provided by the Statutes of the State of Texas to secure the rents due hereunder and all obligations of the Lessee."

On February 28, 1949, M. R. Watson borrowed $12,500 from appellant. At such time a written agreement was executed by Mr. and Mrs. Watson in which they promised that they would "cause to be executed by all persons necessary a chattel mortgage covering machinery, equipment, furniture and fixtures owned by" Mr. Watson.

On April 19, 1949, Watson gave appellant a chattel mortgage on numerous items consisting of tools and equipment, then in appellee's building, which were incidental to Watson's garage and automobile business.

The trial court made full findings of fact including the following:

"Of the property listed on said Exhibit A all items, except items fourteen, fifteen, eighteen, nineteen and twenty, were tools and apparatus belonging to the trade of a motor vehicle mechanic, but Watson, the owner of said items, was not a motor vehicle mechanic and never, during the time involved in this lawsuit, did any work in said business in the nature of the work of a motor vehicle mechanic.

"9. Items fourteen, fifteen, nineteen and twenty of the property listed on said Exhibit A were suitable for use in the office of said business and in keeping the books and records of said business and were so used while they were in said building.

"10. The parts bins, listed on said Exhibit A as item eighteen, were suitable and convenient for use in keeping motor vehicle parts and exhibiting them for sale, were so used while they were in said building, such merchandise was sold therefrom to the public during said time, and during said time motor vehicle parts kept in them were taken therefrom and used in repair work done by said business, but said parts bins were not essential or necessary to said business."

The reasonable market value of all items in Exhibit A except items 1, 14, 15, 18, 19, and 20, was found to be not less than $1,000 and the reasonable market value of items 14, 15, 18, and 20 was found to be not less than $1,000.

We believe that Mr. Watson was a person entitled to the exemption provided in Section 5, Article 3832.

Mr. Watson owned the garage business in which the tools and other apparatus was used and he was its general manager, devoting all of his time to his automobile business.

In Smith v. McBryde, Tex.Civ.App., 173 S.W. 234, 235 (San Antonio C.C.A.), Judge Fly in discussing Section 4 of Article 3832 (then Art. 3785, Vernon's Sayles' Stats.), exempting "all implements of husbandry" said "This would include all implements used by the farmer in conducting his farming operations, not only those that he might use directly, but those used by his tenants and employes."

This construction given Section 4 is equally applicable to Section 5 and, in our opinion, is correct as applied to both sections under the familiar rule of agency that what one does through an agent one does himself. Any other construction of the statute would render it of little value and would be contrary to the rule of liberal construction so often applied to this statute.

The following quotation from Howard v. Williams, 2 Pick., Mass., 80, 83, as quoted in the dissenting opinion of Hawkins, J., in McFarland v. Hammond, 106 Tex. 579, 173 S.W. 645, is an excellent expression of what we consider the law to be:

"The exemption is not limited merely to the tools used by the tradesman with his own hands, but comprises such, in character, and amount, as are necessary to enable him to prosecute his appro-

priate business in a convenient and usual manner; and the only rule by which it can be restricted is that of good sense and description in reference to the circumstance of each particular case. It would be too narrow a construction of a humane and beneficial statute to deny to tradesmen, whose occupation can hardly be prosecuted at all, much less to any profitable end, without the aid of assistance, as journeymen and apprentices, the necessary means of their employment." 106 Tex. 579, 173 S.W. 659.

Appellees cite the case of Willis v. Morris, 66 Tex. 628, 1 S.W. 799, as holding to the contrary. We have carefully read this case and while it does say that a person who does mechanical work with his hands is entitled to claim his tools as exempt, it does not say that the exemption may not be claimed by one who actively manages his own mechanical shop but whose employees alone actually use the tools and apparatus.

Since the lien given a landlord by Article 5238, V.A.C.S., does not extend to exempt property we hold that appellees had had no statutory lien upon the items which were found by the trial court and conceded by appellees to be tools or apparatus belonging to the trade of a mechanic. Hamberlin v. Aston, 114 Tex. 263, 267 S.W. 684.

■ We also hold that some of the items referred to in the preceding paragraph such as items 2, 3, 4, 6, 8, 9, 10, 11, 12, 13, 16, 21, 23, and 24 were not "stock" or "fixtures" within the meaning of the provisions of the lease contract, set out above, and hence that appellees had no contractual landlord's lien on such items.

■ We find it unnecessary to determine whether items 14, 15, 18, 19, and 20 were tools or apparatus belonging to any trade or profession because we are of the opinion that they are "fixtures" within the meaning of the provisions of the lease copied above, the value of which exceeds the amount of the judgment for actual damages rendered against appellant.

Since the statutes exempt tools or apparatus belonging to a trade or profession from forced sales only a lien voluntarily created on such articles is valid.

■ It is obvious that the parties to the lease did not use the word "fixtures," in the paragraph providing for a lien, in its legal sense as being a chattel which when attached or annexed to the realty becomes a part of it for the very good reason that as to such "fixtures" appellees would be owners.

Furthermore the lease expressly provides that trade fixtures which are attached to the realty may be removed, lessee to pay for any damages. Under these circumstances there could be no "fixtures" in the sense above indicated. Morris v. Biggs & Co., Tex.Civ.App., 165 S.W.2d 915 (Amarillo C.C.A., writ dism.).

If the word "fixtures" as used is to have any significance it must be held that it was used in referring to movable trade fixtures. Such, it seems to us, was the clear intention of the parties.

■ Appellant argues that these items were nevertheless tools or apparatus and were exempt notwithstanding the lien provision of the lease because reference is there made to the lien "provided by the Statutes of the State of Texas" and since such statutes do not create a lien on exempt property, no lien was created by this lease.

This argument, while specious, is not sound. To so construe the lease would be to convict the parties of agreeing "lienwise" to nothing. A reasonable interpretation of this provision of the lease is that the descriptive reference to the statutes was to those which gave the lien and not to those which took it away.

The result of what we have said above is that the trial court was correct in rendering judgment against appellant for conversion in the sum of $1,000 with interest.

This brings us to the question of exemplary damages.

The trial court made this finding:

"On December 29, 1949, the corporation, acting through one Lindsay, with Watson's consent but in spite of plaintiffs' positively expressed objections

and with full knowledge of the fact that Watson was occupying said building as plaintiffs' tenant and had not paid them all rent due during the then current contract year, wilfully, intentionally and in reckless disregard of plaintiffs' rights, wrongfully took possession of and removed from said building all of the items of personal property listed on said Exhibit A, and thereafter sold all of same except three items (items one, six and nineteen) and has failed and refused to pay the proceeds of such sales or any part thereof to plaintiffs."

It is apparent that the trial court based his judgment of $500 exemplary damages upon the finding that appellant wrongfully removed all of the items listed on Exhibit A. Since we have held this to be incorrect there is no way for us to determine the amount of exemplary damages, if any, which the trial court would have allowed had the award been based upon the facts and law as we have found them to be.

■ Appellant has three points briefed together, which complain of the judgment against it for the reason that the evidence shows that there was property belonging to Watson remaining in the leased building of sufficient value to satisfy appellees' claim for rent. Appellant cites no authority nor any legal principle in support of these points. We do not know of any reason for compelling appellees to abandon their suit against appellant for conversion and take their chances of collecting their debt from other sources.

■ In addition to the money judgment against appellant and Watson described above, appellees obtained judgment against Watson for an additional sum of $1,862.50. This was for $612.50 rent which accrued after December 29, 1949, $1,000 for damages to the leased building, and $250 attorneys' fees, and to collect which a foreclosure was decreed against all property belonging to Watson left in the leased building. The proceeds of the foreclosure sale were directed to be applied (1) to costs (2) to the $1,862.50 judgment against Watson (3) to the joint and several judgment against appellant and Watson (4) to appellant for any sum paid appellees under the joint and several judgment against it and Watson, and (5) to Mr Watson.

Appellant, relying upon the rules relating to marshaling of assets, contends this portion of the judgment is erroneous.

We do not see how appellant has any just complaint as to the form of this judgment. Appellant neither sought nor obtained any judgment against Watson. It is protected to the extent that it pays the joint and several judgment for conversion and this, it seems to us, is as far as the pleadings, facts and law authorized the court to go. If appellant had a claim against Watson it should have been presented if relief, based upon it, is to be granted.

Appellant's other points are immaterial in view of the disposition we have made of this case.

Since exemplary damages are so closely linked to actual damages we do not believe the trial of one can be separated from the trial of the other.

But for the issue of exemplary damages we would order an affirmance, however since that portion of the judgment cannot stand, the cause must be reversed and remanded. It is so ordered.

Reversed and remanded.

## On Motion for Rehearing.

■ Appellees' motion for rehearing is granted insofar as they request leave to file a remittitur with respect to the award of exemplary damages.

If appellees file a remittitur of $500 in this Court on or before 10 days from this date our former judgment reversing and remanding this case will be set aside and the judgment will be accordingly reformed and as reformed affirmed, costs of appeal to be adjudged against appellees.

In all other respects the motion is overruled.

Motion overruled in part—granted in part on condition that remittitur be filed.

## Supplemental Opinion.

### PER CURIAM.

Appellees having filed a remittitur of $500 it is the order of this Court that our

former judgment reversing and remanding the cause be set aside; the judgment of the trial court is now reformed so as to exclude recovery of $500 for exemplary damages and as reformed the judgment of the trial court is affirmed. Costs of appeal are assessed against appellees.

Former judgment set aside—Judgment reformed and as reformed affirmed.