Leonard MERITZ and Paul D. Freed,
Bankrupts, Appellants,

v.

Phil PALMER, Jr., Trustee, Appellee.

No. 17514.

United States Court of Appeals
Fifth Circuit.

April 30, 1959.

Rehearing Denied June 5, 1959.

Arthur S. Goldberg, Goldberg & Alexander, Dallas, Tex., for appellants.

James S. Mahon, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BROWN and WISDOM, Circuit Judges.

HUTCHESON, Chief Judge.

This is an appeal from the order of the District Court confirming and adopting and entering as his own the Opinion [1]

---

1. First setting out the articles claimed as exempt, the opinion thus states the bankrupt's claims:

"Leonard Meritz and Paul David Freed formed a partnership and engaged in the metal electroplating business in Dallas

of the Referee, which denied to Leonard Meritz and Paul David Freed, bankrupts, formerly dba Liberty Plating and Processing Company, a partnership; certain listed items of equipment, furniture and fixtures claimed by the bank-

under the name of Liberty Plating & Processing Company from January, 1954, until January, 1958, when the plant was closed. The partners filed a voluntary petition in bankruptcy on behalf of themselves and the partnership and were adjudicated bankrupts on Jan. 16, 1958.

"Mr. Meritz testified that his principal duties were that of manager and purchasing agent while his partner took care of sales for the most part. He stated that he had operated the plant himself personally on occasions, although he had had no previous experience as an electroplater prior to entering this business and always had a technical man in the plant. From 6 to 8 people were employed shortly before the plant closed. The business required considerable capital; it was stated that lack of working capital was one of the factors in the failure.

"The partners have claimed as exempt to themselves as tools and apparatus of the trade of electroplater a long list of items which taken together constitute almost the whole of the furniture, fixtures, and equipment of the office and plant. The most expensive equipment on the list is an automatic plating machine and filter which cost approximately $35,000. There is a koroseal lined steel tank 8 feet long and 4 feet high, and an electric generator 8 feet long, 4 feet wide and 6 feet high, of 5000 amp. capacity, supplying power for the operations. This claim, it seems to me, can be sustained only on the ground that the bankrupts are entitled under the State law to retain as exempt almost everything which is necessary or even convenient to put themselves back into business. On no other theory that I can see can a claim of exemption as tools and apparatus of the trade as electroplater be sustained to such equipment as that above referred to plus such unrelated things as a walnut desk and swivel chairs, an electric adding machine and a check writer, an intercommunicating system, air conditioners, soft drink dispensers, and a sump pump in the front yard, all of which are claimed. I have, therefore, approached the claim primarily from that standpoint and denied it as a whole.

"The claimants in the petitions for review which each filed, as an alternative ground for their petitions say that the Referee erred in not holding at least a portion of the property exempt as tools and apparatus of the trade because the evidence showed them to be hand operated. The particular items referred to are not specified in the petitions for review. However, it does not appear that any of those on the list of items claimed 'belong' to the electroplating trade, at least in the sense that they would not be just as useful in some other trade or activity. This would be true, for example, of the set of micrometers, the belt grinder, and instrument thickness gauge, a hydraulic pallet truck, and an oxy-acetylene welding set, all of which are on the list as claimed. * * * "

Thereafter, pointing out that there are two divergent lines of authorities in Texas construing the exemption statute in question, one narrow and restrictive, the other broad and liberal, and stating that his duty as referee in a situation of this kind was to look to the decisions of the federal courts in his circuit, and that the controlling decisions in this matter are: Peyton v. Farmers' National Bank of Hillsboro, 5 Cir., 261 F. 326; In re Willis, D.C., 292 F. 872, 873; In re Kessler, D.C., 2 F.2d 284; In re Turrentine & Thompson, D.C., 6 F.Supp. 490; In re McFrancis, D.C., 22 F.Supp. 581; he concluded that it would be fruitless for him to undertake to reconcile or distinguish the apparently irreconcilable Texas state court decisions. Going on then to analyze the cited federal decisions and on that analysis to determine that they compelled a decision in favor of the trustee, he thus concluded his opinion:

"As indicated, the bankrupts have claimed as exempt almost everything in the way of furniture, fixtures and equipment in the office and plant necessary or useful to the operation of an electroplating business of substantial proportions. The obvious result of allowance of a claim of this character as a whole would be to permit the bankrupts to retain the property, to resume business free from the claims of their unsecured creditors, or to dispose of it and retain the proceeds; in this instance to retain the proceeds since the property has been sold with the understanding that the claim if allowed would attach to the proceeds. Taken separately, it seems to me that the claim for each item must fail under the decisions above cited, either because it is heavy, power driven machinery, or is 'too bulky and unwieldy to be operated by hand', or is merely a convenience not 'peculiarly essential' to the electroplating trade."

rupts to be exempt as "tools and apparatus of trade" under Subdivision 5, Article 3832 [2] Vernon's Revised Civil Statutes of the State of Texas. The claimed items included electrically operated "apparatus", "apparatus" such as vats, tables, etc. used in connection with the electrically operated "apparatus", hand operated "tools" and "apparatus" and office furniture and equipment, soft drink machines and water coolers used by the employees, and a time clock used to keep the employee record required by law. The bankrupts, both heads of families and, as co-owners and co-managers of Liberty Plating & Processors, a partnership engaged in the trade of electroplating, and themselves actually engaged in the trade as craftsmen electroplaters operating said equipment until prevented by legal action. The trade of an electroplater is a trade which requires special skills. The issue was joined by reason of the filing by the Trustee of his Report of Exempt Property as to each of these bankrupts and the filing of Objections to Trustee's Report of Exempt Property by both the bankrupts, whereupon the Referee set this matter for hearing. The Referee considered in his opinion the value of the equipment, its size, its uses, whether or not it would be useful in another trade, whether or not it was powered by electricity or by hand, and also whether or not such machinery was merely a convenience or "peculiarly essential" to the electroplating trade.

Here, attacking the opinion and order as contrary to the genius and spirit of the Texas exemption laws and to the present prevailing weight of authority requiring their liberal construction, appellants, in a most exhaustive and helpful brief, present, analyze, and appraise the Texas cases bearing on the question here involved. On the basis of this overall presentation, they assert with firmness and vigor that the referee and the district judge erred in denying to appellants as tradesmen and artisans their statutory exemptions of tools and apparatus of the electroplating trade.

In an equally exhaustive and candid brief, the trustee, reviewing the authorities and assessing their value and controlling force, insists with confidence that the order must be affirmed.

As a result of considering these respective contentions, we are not left with the impression, that the law is clearly and definitely settled in favor of the construction put upon the statute by the referee, and that all of the disallowances were proper. On the contrary, we are of the opinion that the referee placed too great emphasis on, and gave too great effect to, cases favoring a strict, rather than a liberal, construction, and by following too narrowly and giving too much effect to decisions in some of those cases and to expressions in others which, not necessary to the decision, went contrary to the liberal views prevailing in Texas in respect to exemption claims. In short, we think he erred primarily in according to expressions used and statements made arguendo in some of the cases and to the opinion of this court in the Peyton case and the opinions of the district courts discussed by him far greater general effect and influence in determining this case on its own facts than they should have had.

We have, therefore, made an examination of the cases cited by the parties in the light of the controlling principle as set down and applied in the authoritative Texas cases. In Green v. Raymond, 58 Tex. 80, in 1882 this principle was thus given authoritative expression by the Supreme Court:

"The settled policy has ever been to make liberal exemptions of property from forced sale in this state. That liberality has been extended from time to time, until today Texas, in this particular, surpasses all the other states of the American Union. The wonderful improvement and

---

2. Art. 3832, Subdivision 5:
"All tools, apparatus and books belonging to any trade or profession."

Cf. Subd. 4:
"All implements of husbandry."

progress of the past few years attest the wisdom of that policy, which, if continued, will in after years be demonstrated by a commonwealth composed not only of prosperous, free and independent, but also of solvent citizens.

"It has not been the policy of the judicial department to restrict this liberalizing tendency of the law-making power by a strict construction of these laws; on the contrary, they have been 'liberally construed with a view to effect their objects and to promote justice.'

"The terms used, and especially the word 'apparatus', is strikingly apt, a generic term of the most comprehensive signification.

"The trade or profession of Raymond was that of editor and publisher of a weekly newspaper. What tools and apparatus belonged to that trade or profession? It is the printing press, type, cases, etc., and not alone the pair of scissors, bottle of ink and goose-quill pen of the editorial department. The apparatus belonging to the trade of a publisher must of necessity include the press, type, cases, etc., which are essential to the conducting of that business."

Applied thereafter without wavering [cf. St. Louis Type Foundry v. International, 74 Tex. 651, 12 S.W. 842, where the court applied the exemption to partnership property], it was again given vigorous expression by the Supreme Court in 1951 in Hickman v. Hickman, 149 Tex. 439, 442, 234 S.W.2d 410, 413. There, in giving effect to Exemption No. 4, "Implements of Husbandry", an exemption of the same general nature as the one claimed here [cf. Commercial Credit Co. v. Patterson, Tex.Civ.App., 248 S.W.2d 965, at page 968], it thus restated the principle:

"Our holding is in accord with our public policy as declared in Arts. 3486 and 3487, R.S.1925, that the court shall make an allowance of cash, not to exceed $500, to the widow and children to compensate them for any specific exempt articles not among the effects of the deceased; and no conditions whatever are fixed against their right to this payment. It applies the principle stated in Carson v. McFarland, Tex.Civ.App., 206 S.W.2d 130, 132 (er. ref.): 'our exemption laws should be liberally construed in favor of express exemptions, and should never be restricted in their meaning and effect so as to minimize their operation upon the beneficent objects of the statutes. Without doubt the exemption would generally be resolved in favor of the claimant.'"

Other cases supporting and giving such liberal application to the claimed exemption are: McMillan v. Dean, Tex. Civ.App., 174 S.W.2d 737; Hackler v. H. Kohnstamm & Co. of Texas, Tex. Civ.App., 227 S.W.2d 347; Commercial Credit Corp. v. Patterson, Tex.Civ.App., 248 S.W.2d 965; Hinckley-Tandy Leather Co. v. Hazelwood, Tex.Civ.App., 35 S.W.2d 209; Moore v. Neyland, Tex. Civ.App., 180 S.W.2d 658, 659; Lessing v. Russek, Tex.Civ.App., 234 S.W.2d 891. Without undertaking to analyze these cases, case by case, it is sufficient to say that we have reached the firm conclusion that the cases on which the referee relied were not intended to, they did not commit the Federal Court to the narrow policy espoused here by him, and that, under the controlling cases, the order appealed from must be reversed. The order is, therefore, reversed and the cause is remanded with directions to canvass the claims of exemption with respect to each particular article claimed, under the governing and guiding principle announced in the cases, that the exemption must be of tools or apparatus fairly belonging to or usable in the trade, that it may not be extended to articles such as furniture and fixtures and other equipment which have a merely general value and use in setting up a business

establishment. Despite, too, statements in some of the earlier cases, largely dicta, indicating a contrary view, the controlling authorities make it clear that what was said in some of the earlier cases must be construed as dicta or, if not, as said in the light of the habits and practices in the trades of that day, and, thus limited, it was not intended thereby to lay down a rule for the present when nearly every tool, to say nothing of apparatus, is, or is capable of being, power driven, and most trades are conducted not by artisans working singly and alone but by persons engaged in particular trades and having men working under them.

Reversed and remanded for further and not inconsistent proceedings.