**In re Donald Eugene PETERS and Carolyn Jean Peters, Debtors.**

**Bankruptcy No. 88–10360.**

United States Bankruptcy Court, W.D. Texas, Austin Division.

Sept. 20, 1988.

**402**

John B. Meadows, Meadows & Welch, Austin, Tex., for debtors.

Beth Fielding Siever, Austin, Tex., for trustee.

### MEMORANDUM OPINION

LARRY E. KELLY, Bankruptcy Judge.

On the 3rd day of August, 1988, this Court heard the objections of the Trustee to certain real and personal property exemptions claimed by Donald E. Peters and Carolyn J. Peters, (hereinafter "Debtors"). The real property is located in Sao Paulo, Brazil and it is the location of the real property, outside of the State, which forms the basis of the Trustee's objection. The objection to the personal property centers on the values attributed to the property by the Debtors and on the issue of whether jewelry can be exempted in light of the recent amendments and codification of the Texas Property Code (hereinafter referred to as "Property Code") TEX.PROP.CODE § 42.001(a). For the reasons stated the Court sustains the Trustee's objection to Debtor's homestead claim and overrules the objections to the personal property including the jewelry. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (B).

### I. FACTUAL BACKGROUND

1.01. The Debtors commenced this Chapter 7 case with a voluntary petition on February 8, 1988.

1.02. Schedules were timely filed and in Schedule B–4, Debtors listed those assets they claimed as exempt, opting to use applicable state law as authorized by 11 U.S.C. § 522(b)(2).

1.03. The Trustee timely objected to the homestead claim, the jewelry and the aggregate values attributed to the jewelry, household goods and art objects.

1.04. In pertinent part Debtors' Schedule B–4 and Debtors' Exhibits at the trial list:

a. Residence located in Sao Paulo, Brazil;

b. Personal jewelry consisting of:
 (1) Men's wedding ring—estimated value $200.00;
 (2) Men's Seiko watch—estimated value $50.00;
 (3) Three men's class rings—estimated value $150.00;
 (4) Ladies Seiko watch—estimated value $50.00;
 (5) Citrine ring—estimated value $165.00;
 (6) One carat diamond wedding ring—estimated value $1800.00;
 (7) Tourmaline pendant—estimated value $60.00;
 (8) Emerald-cut tourmaline—estimated value $100.00;

(9) Two gold bangles—estimated value $100.00;

(10) One gold bracelet—estimated value $100.00;

(11) One gold chain—estimated value $100.00;

(12) Garnet and tourmaline earrings—estimated value $125.00.

Total estimated value—$3,000.00.

c. Miscellaneous art objects consisting primarily of small sculptures, watercolors, paintings, prints, sketches and rugs valued at $3,180.00;

d. Various itemized household goods and appliances valued at $9295.00.

1.05. All of the jewelry was used by Debtors in their usual and normal course of living and was not in any way acquired for reinvestment.

1.06. All of the artwork was acquired and is used by the Debtors in the usual and normal course of living and was displayed in their house as normal decoration. It was not in any way acquired as an art collection or for reinvestment.

1.07. All of the household goods and appliances were acquired and used in the usual and normal course of Debtors' daily living.

1.08. The Trustee introduced no evidence to counter the values testified to by the Debtors. The Court found Debtors' testimony to be credible. Therefore, the aggregate value of the jewelry, artwork and household goods is found to be those values indicated above.

1.09. The residence in Sao Paulo, Brazil was purchased by the Debtors when they lived and worked in Brazil and they used it as their principal residence. Approximately one year prior to the filing of this bankruptcy Debtors returned to the United States, first living in Lakeway, Texas and currently living in Houston, Texas. Their home in Brazil is leased. Debtors own no other real estate which they claim as homestead in Texas or elsewhere. Although Debtors would like to find an opportunity to return to Brazil, they currently have no plans or expectations of returning.

## II. ISSUES

2.01. The first issue is whether a debtor filing bankruptcy in Texas and claiming exemptions under the Texas statutes, can exempt residential real property located outside the state.

2.02. The second issue is whether or not jewelry falls within the scope of the list of eligible items of personalty which debtors can exempt from property of the estate under Texas law.

2.03. A third issue is whether this Court can rule on the second issue in light of a recent District Court opinion within this District which has ruled that jewelry cannot be exempted under the applicable Texas statute.

## III. DISCUSSION CONCERNING HOMESTEAD CLAIM TO RESIDENCE IN SAO PAULO, BRAZIL

3.01. Exemption laws are local in their nature and have no extra-territorial force or operation; they relate to the remedy and depend on the law of the forum. *Bell v. Indian Line–Stock Co.*, 11 S.W. 344 (Tex.1889); *William Cameron and Co. v. Abbott*, 258 S.W. 562 (Tex.Civ.App.—Amarillo, 1924, no writ).

3.02. The law setting forth an individual's right to claim real property homestead exemptions in Texas is established in Article XVI, § 51 of the Texas Constitution and in the Property Code §§ 41.001 and 41.002. The Texas homestead exemption, based on size rather than value, is among the most generous, if not the most generous in the United States. *See* Collier on Bankruptcy, (15th ed.), Vol. 7 (1987).

3.03. Homestead is defined in Property Code § 41.002:

"(a) If used for the purposes of an urban home or as a place to exercise a calling or business in the same urban area, the homestead of a family or a single adult person, not otherwise entitled to a homestead, shall consist of not more than one acre of land which may be in one or more lots, together with any improvements thereon.

.    .    .    .    .

(c) The definition of a homestead as provided in this section applies to all homesteads *in this state* whenever created." (emphasis added).

■ 3.04. This Court has previously been faced with a similar issue involving proceeds from a pre-petition sale of a debtor's Iowa homestead. At that time this Court ruled that Texas statutory references to homestead are limited to homesteads located within the state of Texas. *In Re John and Joann Schmidt,* Case No. 1–86–01102 (Bankr.W.D.Tex., September 1, 1987).

3.05. To reach a contrary result could lead to absurd results. By the mere happenstance of filing in Texas, or through blatant forum shopping, a debtor could attempt to change the size, value or susceptibility to claims of creditors of real property located in other states, or as in this case, other countries. The case of *William Cameron and Co. v. Abbott,* supra, also supports the proposition that statutory references to homesteads are limited to real property located within this state. That decision reviewed several cases involving sales of homestead in one state and attempted exemption of the proceeds pursuant to the law of a second state. It also referred to decisions holding that the proceeds from the sale of a homestead had to involve proceeds from the sale of a homestead within the state whose exemption laws were being asserted. In reviewing those cases the court stated:

"They are correct, however, we think in the holding that the homestead exemption laws of the state are to be construed as applying only to homestead property within such state."

This Court concurs in that observation.

## IV. DISCUSSION CONCERNING CLAIMED PERSONALTY AND JEWELRY

4.01. The facts show that the Debtor's jewelry, art objects and household goods and appliances are valued well under the $30,000.00 aggregate valuation which can be claimed as exempt under Property Code § 42.001(a). The Court finds that the art objects and household goods are not collections or items acquired for reinvestment. The Trustee therefore has failed to meet her burden of proof to demonstrate that the items are not properly claimed. Property Code, § 42.001(a) and Bankruptcy Rule 4003(c).

4.02. The Trustee's objection to the exemption of Debtors' jewelry however merits more serious attention. A recent District Court opinion in this District, affirming a prior Bankruptcy Court opinion, has ruled that "jewelry" is not within the pale of items eligible to be exempted under Property Code § 42.002(3)(C). *In Re Francisco A. Fernandez and Maura M. Fernandez,* 89 B.R. 601 (W.D.Tex.1988) (hereinafter "Fernandez"). The Fernandez opinion observed that Property Code § 42.002

"... lists the various categories of personal property eligible for exemption, none of which include jewelry."

The decision concludes that jewelry is therefore not eligible to be exempted. The cited Property Code section does list "clothing" while its predecessor, Articles 3836 and 3832 refer to "wearing apparel". The *Fernandez* opinion cites Websters Ninth New Collegiate Dictionary, G & C Merriam Co., 1987 and Black's Law Dictionary, page 1765, (revised 4th Ed.1968) as authority for the proposition that the term "wearing apparel" is a broader category than the current term "clothing". With this reading the District Court denied the Debtor's claimed jewelry exemption.

■ 4.03. It is with the utmost respect for the District Court and the doctrine of the law of the case that this Court hesitantly goes forth to note its opinion that "clothing," within the meaning of Property Code § 42.002 is a synonymous term with "wearing apparel" and alternatively that Property Code, § 42.002(3)(C) does encompass jewelry to the extent reasonably necessary for a debtor's family.

## A. STATUTORY BACKGROUND AND DEFINITIONS

4.04. This analysis must begin with some essential fundamentals. In *Butner v. United States,* 440 U.S. 48, 50, 99 S.Ct.

914, 915, 59 L.Ed.2d 136 (1979), the Supreme Court recognized that property rights are created by state law and that unless federal law requires a different result, state law should govern property law issues in federal court.

4.05. Article 1, § 8, cl. 4 of the United States Constitution requires Congress to establish uniform laws on the subject of Bankruptcy. Pub.L. 95–598, Title I, Nov. 6, 1978, 92 Stat. 2549 enacted the current bankruptcy laws and codified them into Title 11 of the United States Code.

4.06. 11 U.S.C. § 522(b) allows an individual debtor to exempt from property of the estate that property listed in paragraph (1) or paragraph (2) of § 522(b). The debtor therefore is given the right to elect whether to rely on the exemption laws of his own state or on those of the United States. Sub-paragraph (2) provides the debtor with the right to exempt under subsection (2)(A) "Any property that is exempt under ... *State or local law* that is applicable on the date of the filing of the petition ...". (emphasis added). The fact that the federal statute, the general intent of which is to enact a uniform law on bankruptcy, allows invocation of state law as to exemptions indicates that there is no overriding federal interest as to exemptions. The Debtors in this case have elected to claim under § 522(b)(2)(A), state exemptions. Therefore, state law must govern the outcome of objections to the exemptions which the Debtors have claimed in this case.

4.07. It is undisputed that when state exemptions are elected, exemptions are to be allowed or set aside in accordance with the state or local laws in effect at the time of the filing of the bankruptcy petition. 11 U.S.C. § 522(b)(2)(A).

4.08. At the time this case was commenced, Property Code § 42.002 governed exemptions of property under Texas law. The Property Code had been enacted by the 68the Texas Legislature acting in regular session in 1983, with the Property Code taking effect January 1, 1984. The Property Code was intended to revise the language, but not the meaning of the existing state statutes as a part of an ongoing statutory revision program authorized by the Texas Legislative Council. *See generally,* Vernon's Annotated Article Texas Statute 5429b–1, et seq, repealed by Acts 1985, 69th Leg., Ch. 479 § 224 effective September 1, 1985 and now found in titles No. 1 and No. 3 of the Government Code. TEX.GOV'T CODE ANN. §§ 311.001–312.-013 (Vernon 1988).

4.09. TEX.GOV'T CODE ANN. § 323.006 details the powers and duties of the Texas Legislative Council:

"(a) The council shall:

(6) report council recommendations to the legislature and, if appropriate, provide drafts of legislation with the report;

(7) assist the legislature in drafting proposed legislation; and

(b) By agreement with either house of the legislature or legislative agency, the council may perform other services or functions for or on behalf of the house or agency."

4.10. The statutory revision program is explained in TEX.GOV'T CODE ANN. § 323.007 as follows:

"(a) The council shall plan and execute a permanent statutory revision program for the systematic and continuous study of the statutes of this state and for the formal revision of the statutes on a topical or code basis. The purpose of the program is to *clarify and simplify the statutes* and to make the statutes more accessible, *understandable* and usable. (emphasis added).

(b) *When revising a statute the council may not alter the sense, meaning, or effect of the statute.* (emphasis added).

(c) As part of the statutory revision program, the council shall:

(1) prepare a statutory record showing the status and disposition within the classification of the revised statutes of all Acts enacted by the Legislature;

(2) prepare and submit to the Legislature in Bill form statutory revisions on a topical or code basis;

(3) include a report with each revision that contains revisor's notes explaining in detail the work done; and

(4) formulate and implement a continuous revision program so that statutes that have been revised and enacted may be updated without the need for subsequent major revisions."

4.11. As a part of the revision process the Property Code was enacted. The specific purpose of the Property Code is stated in Property Code § 1.001:

"(a) This Code is enacted as a part of the State's continuing statutory revision program begun by the Texas Legislative Council in 1963 as directed by the Legislature in Chapter 448 Acts of the 58th Legislature, Regular Session 1963 (Article 5429 b–1, Vernon's Texas Civil Statutes). The program contemplates a topic by topic revision of the State's general and permanent statute law *without substantive change.* (emphasis added).

(b) Consistent with the objectives of the statutory revision program, the purpose of the Code is to make the law encompassed by this Code more accessible and understandable by:

(1) Rearranging the statutes into a more logical order;

(2) employing a format and numbering system designed to facilitate citation of the law and to accommodate future expansion of the law;

(3) eliminating repealed, duplicative, unconstitutional, expired, executed, and other ineffective provisions; and

(4) *restating the law in modern American English to the greatest extent possible.* " (emphasis added).

4.12. It is therefore abundantly clear that the Texas Legislature did not intend to substantively change prior Texas law relating to exemptions by enactment of the Property Code.

4.13. The *Fernandez* opinion correctly notes that state exemption law prior to enactment of the Property Code did not itemize jewelry as a category of personal property eligible to be exempted. It recognized that prior Texas law had permitted certain items of jewelry to be included as exempt property under the "wearing apparel" category, citing *Hickman v. Hickman,* 228 S.W.2d 565 (Tex.Civ.App.—Eastland 1950), *aff'd* 149 Tex. 439, 234 S.W.2d 410 (1950); and *First National Bank—Eagle Lake v. Robinson,* 124 S.W. 177, 179 (Tex. Civ.App.—San Antonio 1910, no writ). Other authorities for the proposition that jewelry was eligible personal property which could be exempted under the predecessor Texas Exemption Statutes include *Sellers v. Bell,* 94 F. 801, 810–12 (5th Cir. 1899) (necessary and proper wearing apparel includes watch worn by debtor); *In Re Richards,* 64 F.Supp. 923 (S.D.Tex.1946) (diamond ring is exempt property under Texas Personal Property Exemption Statute); and *In Re Evans,* 25 B.R. 105 (Bankr. N.D.Tex.1982) (Rolex watch is exempt).

4.14. Since neither the Property Code nor its predecessor statutes, Articles 3836 and 3832 specifically itemize "jewelry", it is important to focus on *why* the *Fernandez* opinion concluded that the Property Code has "excluded the possibility of jewelry as exempt personal property" while acknowledging that the predecessor statutes clearly included the possibility of jewelry as exempt personal property. At the heart of the *Fernandez* opinion is the assumption that the change in language from Vernon's Annotated Texas Statute, Articles 3832 and 3836 to Texas Property Code § 42.002(3)(C), (from "wearing apparel" to "clothing"), was a substantive change to a narrower definition of the type of personal property eligible to be exempted, which now excludes jewelry. In *Fernandez* the Court *looked to the literal language of the Property Code* provision and made its ruling after looking at Webster's Ninth New Collegiate Dictionary ("Webster Ninth") and Black's Law Dictionary, *supra.* The *Fernandez* court did not address the legislative history which indicates that the wording of the Property Code was not intended to work any substantive change from the predecessor property statutes. Because of the *Fernandez* focus on the language of the Property Code, this Court asserts its view that "clothing" and "wearing apparel" are synonymous terms.

4.15. Going blindly in, where wiser men should fear to tread, this Court will engage in the battle of the dictionaries.[1] First it is noted that Webster's Ninth is an "abridged"[2] version. Webster's Ninth defines "clothing" as "garments in general" and then defines "garments" as "articles of clothing". Although wearing apparel is not a separately defined term in Webster's Ninth, "apparel" is defined as "personal attire; CLOTHING; something that clothes or adorns." It would appear, based on the definitions in Webster's Ninth, that wearing apparel, or apparel, is a slightly broader definition than clothing. Based on this definition *Fernandez* determined that clothing was in fact a more restrictive term and that jewelry was no longer within the scope of its meaning. No explanation is given as to why jewelry would not otherwise be within the perceived narrower scope of clothing even if such narrower scope was a fact.

4.16. To determine if the meaning of "clothing" is so narrow as to foreclose its inclusion of to general items of adornment, such as items of jewelry which are reasonably necessary for a family or an individual, this Court did resort to other dictionaries and found the definitions in pertinent part as indicated:

a. Webster's II New Riverside University Dictionary, the Riverside Publishing Co., 1984 Ed. (Abridged):

(1) Clothing—"clothes";

(2) Clothes—"*WEARING APPAREL,* garments" (emphasis added);

(3) Apparel—"*clothing*: something that covers *or adorns*" (emphasis added).

(b) Webster's Third New International Dictionary, G & C Mariam Co., 1981 ed.:

(1) Clothing—"*all the garments and accessories worn by a person at any one time*"; (emphasis added).

(2) Apparel—"something that clothes *or adorns* as if with garments." (emphasis added).

(c) Webster's New Universal Unabridged Dictionary, Dorset and Baber, 2d Ed.1979:

(1) Clothing—"garments in general; *clothes*; raiment.";

(2) Clothes—"covering for the human body; articles usually of cloth, designed to cover, protect, or *adorn* the body ...". Clothing is noted as a synonym of "apparel";

(3) Apparel—"clothing; garments; dress; *anything that clothes or adorns.*" (emphasis added).

(d) The Random House Dictionary of the English Language, Unabridged Edition, Random House/New York, 1971 ed.:

(1) Clothing—"garments collectively; clothes, raiment, *apparel.*" (emphasis added).

(2) Wearing apparel—"*clothing*" (emphasis added).

(3) Apparel—"a person's clothing, garments; attire ... to adorn ...".

(e) *Webster's New World Dictionary,* The World Publishing Co., 1963 ed.:

(1) Clothing—"clothes; *wearing apparel*".

(2) Apparel—"*clothing*".

(3) Wearing apparel—"garments; *clothing*" (emphasis added).

(f) The Oxford English Dictionary, (unabridged) Vol. II, Oxford at the Clarendon Press, (1933 ed.):

(1) Clothing—"clothes collectively, *apparel,* dress"; (emphasis added).

(2) Apparel—"personal outfit or attire; *clothing generally,* raiment, dress". (emphasis added).

---

**1.** Webster's Ninth defines a dictionary in part as "a reference book containing words usually alphabetically arranged along with information about their forms, pronunciations, functions, etymologies, *meanings and syntactical and idiomatic uses.*" (emphasis added).

**2.** Webster's Ninth defines the term "abridged" in part as meaning "to reduce in scope ... to shorten in duration or extent ... to shorten by omission of words without sacrifice of sense." However well-intentioned, this Court concludes that the definition in Webster's Ninth for legal interpretation purposes did in fact sacrifice the sense intended by the legislators in enacting the Property Code.

Other resource works also support a conclusion that these two terms are essentially synonymous.[3]

4.17. Taking the clear intent of the Legislature as stated in Property Code §§ 1.001 and 1.002 along with these additional standard reference dictionaries, this Court concludes that the plain and normal associations used in the American language support the opinion that "clothing" is synonymous with "wearing apparel". For both reasons, prior case law is applicable. This Court respectfully concludes that jewelry, to the extent reasonably necessary for a family or individual is eligible personal property for exemption purposes based on Property Code Section 42.001 as interpreted by applicable case law.

## B. LIBERAL, NOT LITERAL CONSTRUCTION

4.18. Even if this Court were wrong in deriving its conclusion based on definitions through standard reference works, it could not make the leap that Fernandez does after it determined that "clothing" was a narrower term than "wearing apparel" and then stated that jewelry could not be included within the scope of such narrower term.

■ 4.19. In determining the scope and meaning of any exemption statute bankruptcy courts have long observed the principle that exemptions are to be liberally construed in favor of the debtor. *Hyman v. Stern*, 43 F.2d 666 (4th Cir.1930); *Meritz v. Palmer*, 266 F.2d 265 (5th Cir.1959).

4.20. Exemption laws are local in their nature and have no extra-territorial force or operation. Therefore they relate to the remedy and depend on the law of the forum. *Bell v. Indian Line Stock Co.*, 11 S.W. 344 (Tex.1889). It has been said that exemption laws are subjected to the most liberal construction that the Court can possibly give; the Courts take the stand that

since the statutes have a beneficial object, it is the court's first duty to see that this object is accomplished. *Gaddy v. First National Bank*, 115 Tex. 393, 283 S.W. 472 (Tex.1926).

4.21. In applying the bankruptcy law of the United States to exemptions claimed by bankrupt residents in Texas, the interpretations given to the exemption laws by the courts of Texas govern as precedent. The federal courts, therefore, must give to the exemption laws the same liberal construction in favor of the person claiming the exemption as is accorded to them by the Texas courts. *Southern Irrigation Co. v. Wharton National Bank*, 144 S.W. 701 (Tex.Civ.App.—San Antonio 1912, no writ); *In Re Thompson*, 103 F.Supp. 942 (S.D. Tex.1952); and *Phillips v. Palomo & Sons*, 270 F.2d 791 (5th Cir.1959); also *In Re Schneider*, 9 B.R. 488 (D.C.Cal.1981) (where debtor chooses to exempt property under applicable state provisions, interpretation of those provisions is to be guided by state law and state court decisions; extent of such application is to be governed by applicable state non-bankruptcy law.)

■ 4.22. Statutes are to be read in conjunction with the constitutional provision pursuant to which they were enacted and are to be construed so as not to change the clear mandate of the Constitution. *Stichter v. Southwest National Bank*, 258 S.W. 223 (Tex.Civ.App.—Dallas 1924, writ dism'd). A fair construction of the grants of exemptions must include not only the subject itself, *but everything essential to its beneficial enjoyment. Cobbs v. Coleman*, 14 Tex. 594 (1855). (emphasis added)

4.23. Texas courts have long held that liberal views prevail with regard to Texas exemptions claims. See generally *Cobbs v. Coleman*, 14 Tex. 594 (1855); *Rodgers v. Ferguson*, 32 Tex. 523 (1870); *Patterson v. English*, 142 S.W. 18 (Tex.Civ.App.—Amarillo, 1911, no writ history); *Malone v. Ken-*

---

**3.** *Roget's Thesaurus In Dictionary Form,* Garden City Books, 1961 ed.

　　1. Clothing—"... wearing apparel ...". In the preface to this thesaurus, a stated aim is indicated in part to be the providing of ready synonyms.

Also see, *The World Book Encyclopedia,* Field Enterprises Education Group, Vol. 4: Clothing, (1976 ed.). "Includes—all—the different garments, *accessories and ornaments* worn by people throughout the world." (emphasis added).

*nedy,* 272 S.W. 509 (Tex.Civ.App.—Beaumont, 1925, no writ history); *Cities Service Co. v. North River Insurance Co.,* 130 Tex. 186, 107 S.W.2d 994 (Tex.Comm'n. App.1937); *Moore v. Neyland,* 180 S.W.2d 658 (Tex.Civ.App.—Texarkana, 1944, no writ history);

4.24. In *Meritz v. Palmer,* supra, the Fifth Circuit reversed a lower court decision interpreting the Texas Exemption Statute at that time, Article 3832, subsection 5, which provided for the exemption of "tools and apparatus of trade." The lower court was reversed for following a "strict rather than a liberal construction." *Meritz v. Palmer,* supra at 267. The Texas Supreme Court decision of *Green v. Raymond,* 58 Tex. 80 (1882) was quoted by the Fifth Circuit as authoritatively setting forth the controlling principles:

"The settled policy has ever been to make liberal exemptions of property from forced sale in this state. That liberality has been extended from time to time, until today Texas, in this particular, surpasses all the other states in the American union....

It has not been the policy of the judicial department to restrict this liberalizing trend of the law-making powers by a strict construction of these laws; on the contrary, they have been 'liberally construed with a view to effect their objects and to promote justice.'"

4.25. In another early federal court decision which struggled with the meaning of "wearing apparel" in the Texas exemption statute, the court stated that

"... the phraseology of the Texas statute is as comprehensive as language can make it and, as has been seen, exempts from forced sale all wearing apparel. *In this connection it may be remarked that the exemption laws of this state are liberally construed in favor of the person claiming the exemption."* (Emphasis added).

*In Re Smith,* 96 F. 832, 833 (W.D.Tex. 1899). (Exempting a diamond shirt stud under the provisions of Tex.Rev.Civ.Stat. Ann. Art. 2397).

This same decision also recognized other state cases interpreting the language of applicable Texas Exemption Statutes to include more than what is literally stated as eligible for exemption. See, e.g., *St. Louis Foundry v. International Livestock, Printing and Publishing Co.,* 74 Tex. 651, 12 S.W. 842 (Tex.1889) (holding that the press, type and material belonging to a firm of painters is exempt as tools and apparatus belonging to a trade or profession); *Allison v. Brookshire,* 38 Tex. 200 (the word "horses" in effect is held to be a generic terms and under the statute it was construed to embrace a mule); *Rodgers v. Ferguson,* 32 Tex. 533 (drays and carts are held to be included within the term "wagon"); *Cobbs v. Coleman,* 14 Tex. 596 (1855) (an exemption of a horse is held to extend to things that would make its use beneficial so that a saddle, bridle, etc., are exempt); and *Dearborn v. Phillips,* 21 Tex. 451 (the exemption of a "horse" would include a rope).

It is evident that Texas courts use the principle of liberality, not the strict construction of literalism, in dealing with questions of exemptions. The present Property Code also fails to address issues relating to items such as saddles, bridles, blankets or ropes for horses as well as items such as eye glasses, purses, wallets, umbrellas or usual and normal items of jewelry. This Court believes that the Texas Exemption Statutes were not intended to be a literal laundry list of eligible items of property subject to exemption, but rather, to be considered as generic categories which the courts are to review with a liberal construction in resolving factual disputes such as the one at bar.

4.26. As previously pointed out, this Court believes that the Property Code term "clothing" is synonymous with the term "wearing apparel" used in the pre-Code statutes. Therefore Property Code § 1.002 would compel this Court to consider this prior case law construing those pre-Code statutes in analyzing whether the jewelry at issue can be exempted.

Even if the definition was not synonymous, however, and even if the *Fernan-*

*dez* opinion that clothing be considered a more narrowly defined term than wearing apparel is accepted as accurate, this Court still believes that items of jewelry which are usually and normally associated with a family or an individuals daily wearing habits, should under the principal of a liberal and not a literal construction, be eligible for exemption in this case.

## C. PRINCIPLES OF STATUTORY CONSTRUCTION

4.27. All of the Court's previous discussion is further supported by general principles of statutory construction. The *Fernandez* opinion correctly cited *Carbide International Ltd. v. State of Texas*, 695 S.W.2d 653 (Tex.App.—[3rd Dist.] (Austin) 1985, no writ) for the principle that once laws are revised and codified, the Code becomes the statutory law of the state and it can be looked to without resorting to previous statutes, except to explain contradictions and ambiguities. *Fernandez* did not, however, specifically address the "ejusdem generis" principle of statutory construction which was raised in *Carbide. Supra.*

4.28. Ejusdem generis states that "when particularly described things are followed by words of a more general description, the general description is not to be construed in its widest sense but is held to encompass only things of the same general class as those particularly described. See *Carbide International*, at 656–657. The term "clothing" in the Property Code is a general descriptive term which is *not* preceded by specific or particularly described items of clothing otherwise listed within the statute. Therefore, the ejusdem generis doctrine discussed in the *Carbide International* opinion would not appear to apply to the interpretation of this exemption provision.

4.29. *Carbide International* is instructive on the limits of canons of construction such as ejusdem generis:

"the principle of ejusdem generis, if it be applicable ... may not prevail *if the statute in general contains language which* *effectively discloses a legislative intent contrary to the interpretation which the principle would produce,"* (emphasis added)

citing *Employers Casualty Co. v. Stewart Abstract Co.*, 17 S.W.2d 781 (Tex.Comm'n. App.1929). A further qualification on the doctrine is that general words are not restricted in meaning to objects of the same kind if there is a clear manifestation of a contrary intent. *United States v. Staats*, 8 How. (49 U.S.) 41, 12 L.Ed. 979 (1850); *United States v. Mescall*, 215 U.S. 26, 30 S.Ct. 19, 54 L.Ed. 77 (1909). In the words of the United States Supreme Court,

"while the rule is a well established and useful one, it is, like other canons of statutory construction, only an aid to the ascertainment of the true meaning of the statute. It is neither final nor exclusive.... If upon a consideration of the context and the objects sought to be attained and of the act as a whole, it adequately appears that the general words were not used in the restricted sense suggested by the rule, we must give wider effect to the conclusion afforded by the wider view in order that the will of the Legislature shall not fail."

*Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 88–89, 55 S.Ct. 50, 52, 79 L.Ed. 211 (1934). Property Code sections 1.001 and 1.002 disclose the clear legislative intent to follow prior state law interpreting exemptions. This Court does believe *Carbide International's* direction to look to the codified statute, relied upon by *Fernandez*, is qualified by *Carbide International's* further instruction to consider legislative intent, overlooked in *Fernandez.*

4.30. The problem is not with stating various principles of statutory construction, however, but with the application thereof. A leading authority on the overall issue is *Sutherland on Statutory Construction* ("Sutherland"). Statutory construction and a court's struggles with the meaning of words written by others has long been a recognized contest between two or more probabilities of meaning.[4]

---

**4.** "Though it has its own preoccupations and its    own mysteries, and above all its own jargon,

4.31. Section 46.07 of *Sutherland,* entitled Limits of Literalism, states:

"The literal interpretation of the words of an Act should not prevail if it creates a result contrary to the apparent intention of the legislature and if the words are sufficiently flexible to allow a construction which will effectuate the legislative intention. The intention prevails over the letter, and the letter must, if possible, be read to conform to the spirit of the act."

Sands, *Sutherland* Stat. Const. § 46.07 (4th Ed.).

4.32. In looking at what is referred to as the principal of judicial restraint, at least as applied to statutory construction, another respected jurist has written:

"The basic principle of judicial restraint in statutory interpretation is deceptively simple: stay close to the statutory language. If the statutory language is clear and the result of a literal interpretation does not seem to be one completely unanticipated by the legislature, then relying on the language of the statute is relatively uncontroversial. *If the statute is unclear, however, or if read literally applies to a situation in a way that the legislature probably did not intend, the task is more difficult.*" (emphasis added). J. Clifford Wallace, *The Jurisprudence of Judicial Restraint: A Return to the Moorings, 50 Geo.Wash.L.Rev. 649, 650 (1981).*

This commentary goes on to observe that even where there is no prior case law on the point, certain principles apply:

"(1) clarify only as much of the statute as is necessary to decide the case before the court;

(2) clarify the statute in the fashion that the legislature probably would have, had the ambiguity been brought to its attention;

(3) follow common law principals of statutory construction; and

(4) clarify the statute in a manner that innovates the least against the background of prior law ...".

It further states that "for the most part, common law construction principles are intended to reproduce the intent of the legislature." See, J. Clifford Wallace, *supra.*

4.33. "Words in statutes are not unlike words in a foreign language, in that they too have associations, echoes and overtones." Frankfurter, *Some Reflections on The Reading of Statutes,* 47 Col.L.Rev. 527 (1947).

4.34. Because the meaning of the term "clothing" is at best ambiguous, a court must in any fact situation, involving exemptions under the Property Code, construe the meaning of the term in accordance with the facts of the case. This Court has noted its conclusion that definitionally the term "clothing" is synonymous with "wearing apparel". Definitionally, the rule

judicial construction ought not to be torn from its wider, nonlegal context. Anything that is written may present a problem of meaning, and that is the essence of the business of judges in construing legislation. The problem derives from the very nature of words. They are symbols of meaning. But unlike mathematical symbols, the phrasing of a document, especially a complicated enactment, seldom attains more than approximate precision. If individual words are inexact symbols, with shifting variables, their configuration can hardly achieve invariant meaning or assured definiteness. Apart from the ambiguity inherent in its symbols, a statute suffers from dubieties. It is not an equation or a formula representing a clearly marked process, nor is it an expression of individual thought to which is imparted the definiteness a single authorship can give. A statute is an instrument of government partaking of its practical purposes but also of its infirmities and

limitations, of its awkward and groping efforts ... The process of construction, therefore is not an exercise in logic or dialectic: The aids of formal reasoning are not irrelevant; they may simply be inadequate. The purpose of construction being the ascertainment of meaning, every consideration brought to bear for the solution of that problem must be devoted to that end alone. To speak of it as a practical problem is not to indulge a fashion in words. It must be that, not something else. Not, for instance, an opportunity for a judge to use words as 'empty vessels into which he can pour anything he will'—his caprices, fixed notions, even statesman like beliefs in a particular policy. Nor on the other hand, is the process a ritual to be observed by unimaginative adherence to well-worn professional phrases." Justice Felix Frankfurther, *Some Reflections on the Reading of Statutes,* 47 Col.L.Rev. 527 (1947).

which should prevail in this situation is best expressed by Justice Frankfurter:

"Legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him."

*Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488, 1496 (1944).

4.35. Alternatively, this Court has noted its conclusion that if the terms were not considered synonymous and the scope of the term 'clothing' was more restrictive than 'wearing apparel'; applying the principle of liberal interpretation as required by state law, *Butner v. U.S.*, supra, and Fifth Circuit authority, interpretation would allow jewelry, to the extent reasonably and normally associated with items of adornment which are normally worn by individuals or maintained by families in this state, to be considered eligible personal property subject to exemption.

■ 4.36. Finally, principles of statutory construction recognize that when a court is faced with a statutory term or word which is susceptible of more than one meaning, the court must strongly consider legislative intent. If the definitions were not synonymous, they would need to be interpreted as synonymous because that is what the Texas Legislature mandates. TEX.GOV'T CODE ANN. § 323.007(b) and Property Code § 1.001.

"Tex.Prop.Code Ann. § 42.001 ... represents a codification of pre-existing property law which was emphatically intended not to effect substantive changes in the law. The foreword to the Texas Property Code urges the reader to keep in mind that, 'this is a non-substantive revision.' Similar sentiments are expressed throughout the revisers report written by the executive director of the Texas Legislative Council, which prefaces the volumes containing the Property Code ... *[i]t is not within our domain to reformulate either Texas law or our panel's prior interpretation of Texas law.*" (emphasis added).

*In the Matter of C.T. Bessent, et ux., Silva R. Bessent v. United States of America, (Farmers Home Administration)*, 831 F.2d 82, 83 (5th Cir.1987).

## V. DOCTRINE OF LAW OF THE CASE

5.01. In preparing this opinion this Court was confronted by the doctrine of the law of the case. The rules of this doctrine have been devised to maintain consistency and to avoid reconsideration of matters once decided during the course of a single continuing law suit. See, generally, WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478, at 788, (1982).

There are generally four distinctive problems which arise under this doctrine:

1. Desire of a single court to adhere to its prior rulings without need for repeated reconsideration;

2. Obligation of every court to honor the rulings of a court that stands higher in a hierarchical judicial structure;

3. Respect that one judge or court owes to the rulings of another judge or court in closely related cases; and

4. Issues which arise as a consequence of failure to appeal an issue.

Certainly the second and third of these arguably apply to the case at bar.

■ 5.02. The law of the case directs a court's discretion, but it does not limit the tribunal's power. *Arizona v. California*, 460 U.S. 605, (1983) 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318; *U.S. v. Dejesus*, 752 F.2d 640, 642 (1st Cir.1985) (Law of the case is not a jurisdictional bar to reconsideration of the issue ...); and *Lourmar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir.1983) (Law of the case doctrine "is not ... a barrier to correction of judicial error. It is a rule of convenience and utility and yields to adequate reason.")

■ 5.03. Departure from the law of the case established from an earlier decision such as *Fernandez*, requires a compelling reason. Major grounds recognized by case law include intervening change of controlling law, the availability of new evi-

dence, or the need to correct a clear error or prevent manifest injustice. *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir. 1967).

5.04. "Law of the case terminology is often employed to express the principle that inferior tribunals are bound to honor the mandate of superior courts within a single judicial system." *Insurance Group Comm. v. Denver and R.G.W. Railroad,* 329 U.S. 607, 612, 67 S.Ct. 583, 585, 91 L.Ed. 547 (1947); *South Central Livestock Dealers, Inc v. Security State Bank,* 614 F.2d 1056, 1059 (5th Cir.1980).

5.05. Of course, the scope of the prior rulings and their finality play an important role in the application of this doctrine. Also, there exists a difference between the rule that permits reconsideration of prior rulings by the same judge who made them and the rule that requires an inferior tribunal to heed the commands of a superior tribunal. Prior rulings may be offered for reconsideration by different members of the same court within the framework of a single case or closely related cases and various degrees of fealty have been recognized in each of the many settings that come within this broad description. Wright, Miller and Cooper, supra at 794.

5.06. With all due respect this Court is aware that it is an inferior tribunal in the hierarchy of this district and it has complete respect for the opinion of the District Court in this regard. It will, however, step forward with this opinion, not without trepidation, but based in part upon the confusion it discerns between *Fernandez* and prior state case law interpretations. This Court is not convinced that *Fernandez* supersedes the Fifth Circuit reasoning in *Meritz v. Palmer,* supra (exemption statutes are to be "liberally construed with a view to effect their objects and promote justice"). On the basis of this Court's review of the legislative intent contained in the Property Code, and the interpretation of U.S. Supreme Court and Fifth Circuit authorities cited herein, as well as on the exception of clear error, this opinion is respectfully proffered.

## CONCLUSION

It is the opinion of this Court that the mandate of the Texas Legislature in codifying the Property Code not to make any substantive change has not been violated and the language of Property Code § 42.002(3)(C) is substantially synonymous with that of its predecessor statute, Tex. Rev.Civ.Stat.Ann., Articles 3836 and 3832. This Court further concludes that the liberal construction which courts in this state must give to exemption statutes also allows such jewelry to be included within the scope of the Texas Property Code § 42.002(3)(C). Furthermore, this Court finds that principles of statutory construction compel it to follow the mandate and intent of the legislature and prior case law authority which would allow jewelry in this case to be exempted.

. A separate Order of even date herewith will be entered to effectuate this memorandum opinion.

## ORDER ON TRUSTEE'S OBJECTION TO EXEMPTIONS

On the third day of August, 1988 this Court heard the objections of the Trustee to certain real and personal property exemptions claimed by Debtors in this case. Of even date herewith this Court has entered its memorandum opinion expressing the view that the objection of the Trustee to the real property of the Debtor is located in Sao Paulo, Brazil should be sustained and that the Trustee's objections to the remaining personal property, including jewelry, should be denied. The Findings of Fact and Conclusions of Law contained in the Memorandum Opinion are incorporated herein for all purposes.

IT IS THEREFORE ORDERED that the objection of the Trustee to the homestead exemption claimed by Donald E. Peters and Carolyn J. Peters, located in Sao Paulo, Brazil is sustained and such real property is determined not to be eligible for exemption; and

IT IS ALSO ORDERED that the remaining objections of the Trustee as to any and all remaining personal property, including

jewelry claimed by the Debtors is DENIED and such items are allowed as exempt.

IT IS SO ORDERED.